COMMONWEALTH *vs.* JAMES E. DOMINGUE. November 13, 1984. *Practice, Criminal,* Speedy trial. *Firearms. Destruction of Property. Assault by Means of a Dangerous Weapon.*

Upon conviction by a jury in the Superior Court of assault by means of a dangerous weapon, unlawfully carrying a firearm, and malicious destruc-

tion of property, the defendant was sentenced to concurrent terms of imprisonment. (Convictions on other indictments were placed on file with the defendant's consent and, therefore, are not before us. *Commonwealth* v. *Richards,* 384 Mass. 396, 397 n.1 [1981].) On appeal, the defendant claims (1) that his motions to dismiss the indictments for the Commonwealth's failure to bring him to trial within the period set by Mass.R.Crim.P. 36, 378 Mass. 909 (1979), should have been allowed; (2) that he was entitled to a required finding of not guilty on the carrying charge; and (3) that, on the facts, he could not have been convicted of both the assault and the malicious destruction charges.

1. The defendant's two motions to dismiss the indictments for the Commonwealth's alleged violation of the eighteen-month timetable established for this case by Mass.R.Crim.P. 36(b)(1)(B) were properly denied for the reasons set out by the two judges who passed on the motions in their respective findings and rulings. Rule 36 encompasses the prior case law which holds that a "defendant is not entitled to dismissal if he acquiesces in, is responsible for, or benefits from, the delay." *Barry* v. *Commonwealth,* 390 Mass. 285, 298 n.17 (1983). See *Commonwealth* v. *Look,* 379 Mass. 893, 898-899 n.2 (1980); Reporters' Notes to Mass.R.Crim.P. 36(b)(1), Mass. Ann. Laws, Rules of Criminal Procedure at 526 (1979). The judges' findings indicate that several trial dates were set with the defendant's consent and that the Commonwealth was ready for trial on each of the scheduled dates. Numerous continuances were granted, however, so that the defendant could change counsel, secure financial arrangements with his new counsel, obtain discovery, and move (successfully) for the recusal of the first judge assigned to preside at the trial. These delays were all for the defendant's benefit or were acquiesced in by him. Since the periods involved in these delays far exceeded the delays which the Commonwealth has to justify, there was no violation of rule 36. *Barry* v. *Commonwealth, supra* at 298-299.

We remain firm in this conclusion despite the defendant's further argument that the time periods involved in several of the continuances cannot be excluded because the judges who granted them failed to make the statement of reasons called for in subdivision (b)(2)(F) of rule 36. The argument overlooks the fact that the requirement may be waived by the defendant's acquiescence in the delay as manifested by his agreement to a continuance or his failure to object thereto. *Barry* v. *Commonwealth, supra* at 296 and 298. See also *Commonwealth* v. *Farris,* 390 Mass. 300, 306 n.7 (1983). As previously noted, the delays which the defendant now disputes were all acquiesced in by him and were for his benefit. Hence, he is deemed to have waived the provision now relied on. In addition, the judge who denied the first motion to dismiss expressly found (after examining transcripts of the first session business granting the continuances) that the "ends of justice . . . served by permitting the defendant to change counsel and obtain his discovery . . . outweigh the public interests and the defendant's own interest in a speedy trial as contemplated by Rule 36." Although it would have been preferable had the several judges who allowed the continuances made the statement of reasons called for in Mass.R.Crim.P. 36(b)(2)(F), we see no

reason why, at least in this instance, a judge cannot make the necessary findings when he or she considers the merits of a motion to dismiss under rule 36. This is particularly so where the issue essentially involves the review of documentary materials, such as docket entries, transcript, and clerk's notations. See *Barry* v. *Commonwealth, supra* at 297-298. Contrast *Commonwealth* v. *Hill,* 375 Mass. 50, 62 (1978). The finding quoted above is supported by the record and confirms that "it would be unconscionable to permit [this] defendant to take advantage of a situation where a substantial part of the delay in the disposition of the cases was obviously caused by him and, in addition, was for his benefit." *Commonwealth* v. *Loftis,* 361 Mass. 545, 549-550 (1972).

2. We next discuss the arguments pertaining to the sufficiency of proof on the carrying charge.

(a) The evidence, considered in light of the standard governing motions for required findings in criminal cases, see *Commonwealth* v. *Latimore,* 378 Mass. 671, 677-678 (1979); *Commonwealth* v. *Amaral,* 13 Mass. App. Ct. 238, 239 (1982), may be summarized as follows. The defendant and another man assaulted a customer at the End Zone Lounge sometime after 7:45 P.M. on December 26, 1980, and were asked to leave by the bartender. When the bartender went outside to attempt to obtain a license plate number, he observed the defendant driving a distinctive former police vehicle bearing temporary cardboard dealer's plates. There was another man in the passenger seat. The defendant "hollered" something at the bartender, who then saw a hand emerge from the driver's window and heard several shots fired. The shots missed the bartender but damaged the building. The vehicle sped off. A police officer on patrol in the area had observed an old police car with cardboard plates, registration number 2857, at Fat Daddy's Cafe between 4:30 P.M. and 6:45 P.M. Because he felt that the plates on the vehicle were improper, the officer attempted to reach the vehicle's owner to remove the vehicle from the street. In the process, he discovered that the vehicle was registered to Champion Auto Transport Company of Holyoke. According to an investigator from the Registry of Motor Vehicles, the defendant had recently made an application for repair plates for his used car company and had stated that he already held dealer plates 2857A and B under the corporate name of Champion Auto Transport. The cardboard plate observed by the police officer had not been issued by the Registry, but the number had been issued to the defendant for use at Champion Auto Transport. The investigator knew the defendant and had previously observed old police vehicles at his used car lot. The officer who had seen the police vehicle at Fat Daddy's until 6:45 P.M. next observed it in front of the End Zone Lounge at approximately 7:45 P.M. Shortly after 8:00 P.M., the vehicle was seen back at Fat Daddy's Cafe. Several officers went to Fat Daddy's, which was the defendant's place of business. The defendant admitted to the officers that the vehicle was his but claimed that it was not running. The defendant went in the bar area to retrive a coat at some point before everyone was cleared out of the bar.

From the evidence, the jury could infer that the defendant had dominion and control over the premises of Fat Daddy's Cafe, including the location behind the bar where a .38 caliber handgun was found in a holster. (The officer spotted the handgun from a vantage atop the bar, a position to which he had been chased by a Doberman pinscher kept in the bar area.) Bullet casings recovered from the End Zone Lounge were also .38 caliber. A police officer, who was qualified as an expert, expressed his opinion, based on the distinctive smell of the handgun, that it had recently been fired, although it was fully loaded when discovered. The police vehicle was searched, but no firearm, bullets or empty casings were found in it. The defendant was pat-frisked upon his arrest with similar negative results. "[T]here was evidence from which the jury could find that the defendant carried the gun [on his person in and around the End Zone Cafe] before the shooting and kept possession of it after the shooting . . . ." *Commonwealth* v. *Morrissey*, 351 Mass. 505, 512 (1967). The motion for a required finding of not guilty on the indictment charging a violation of G. L. c. 269, § 10(*a*), was properly denied.

(b) The judge's instructions specifically limited the jury to considering whether the defendant carried the firearm "in or about the End Zone," where the defendant had been a customer, and not at Fat Daddy's Cafe, where he was employed and the handgun was seized. There is thus no possibility that the defendant could have been convicted of carrying the weapon at his place of business, where he was privileged to do so. Contrast *Commonwealth* v. *Dunphy*, 377 Mass. 453, 458-460 (1979); *Commonwealth* v. *Morales*, 14 Mass. App. Ct. 1034 (1982).

3. The defendant argues that he could not have been properly convicted of both assault by means of a dangerous weapon and malicious destruction of property, because both crimes involved one act of shooting a handgun, and he could not have had "the specific intent to do two mutually exclusive acts at the same instant." He also claims that the jury were inadequately instructed on the intent element of each crime.

The jury were correctly instructed that the malice required to prove malicious destruction of property, under G. L. c. 266, § 127, is "a state of mind of cruelty, hostility or revenge." *Commonwealth* v. *Peruzzi*, 15 Mass. App. Ct. 437, 443 (1983). They also were correctly instructed that conviction of assault by means of a dangerous weapon requires proof of an overt act undertaken with the intention of putting another person in fear of bodily harm and reasonably calculated to do so, whether or not the defendant actually intended to harm the victim. See *Commonwealth* v. *Richards*, 363 Mass. 299, 303 (1973). The differing mens rea elements of both offenses were thus properly differentiated for the jury. Moreover, we find nothing inconsistent with the jury's having found, on all the evidence before them, that the defendant fired the weapon in a spirit of hostility and revenge towards the bar where he had just been asked to leave, and that he also fully intended to frighten its bartender at the same time, and with the same shots.

The judgments on indictment nos. 81-577, 81-579 and 81-581 are affirmed.

*So ordered.*

*Gary S. Pfisterer* for the defendant.

*Dianne M. Dillon,* Assistant District Attorney, for the Commonwealth.