# United States Court of Appeals
## For the First Circuit

No. 14-2124

UNITED STATES OF AMERICA,

Appellee,

v.

JEROME HUDSON,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. Jon D. Levy, U.S. District Judge]

Before

Howard, Chief Judge,
Selya and Stahl, Circuit Judges.

Jane Elizabeth Lee for appellant.
Renée M. Bunker, Assistant United States Attorney, with whom
Thomas E. Delahanty II, United States Attorney, was on brief, for
appellee.

May 9, 2016

HOWARD, **Chief Judge**.  Jerome Hudson pled guilty, without a plea agreement, to possession of ammunition by a felon.  See 18 U.S.C. § 922(g)(1).  Based upon his criminal history he was sentenced as an armed career criminal.  See 18 U.S.C. § 924(e)(1).  On appeal, he claims error in his designation as an armed career criminal and also in the calculation of his Guideline Sentencing Range ("GSR").  We affirm Hudson's classification as an armed career criminal.  In light of the government's concession of error in the calculation of Hudson's GSR, we vacate his sentence and remand.

## I. Facts[1]

At 7:50 in the morning on January 13, 2014, officers in Lewiston, Maine responded to a reported shooting near an apartment complex.  Their investigation quickly identified Hudson -- who had fled the scene -- as the perpetrator.  The police learned through witnesses that an altercation had occurred between Hudson and the father of Hudson's girlfriend's children.  That argument escalated until Hudson fired a number of shots at the other man at "point blank range."  All of this took place as a number of school-aged children began to come out of their homes to catch the school bus.[2]

---

[1] Because Hudson pled guilty, we recite the facts as drawn from the pre-sentence investigation report ("PSR"), change-of-plea hearing, and sentencing transcript.  See, e.g. United States v. Rossignol, 780 F.3d 475, 476 (1st Cir. 2015).

[2] During the change-of-plea colloquy, Hudson admitted to these events sufficiently to support conviction, but he maintained that

The police retrieved four spent shell casings from the scene and made contact with Hudson's girlfriend at the apartment that he and she shared. With her consent, the police searched the home and located an open safe containing 35 rounds of 9mm ammunition, one loose round of .45 caliber ammunition, and two loose rounds of Winchester 9mm ammunition. Officers found Hudson hiding in a stairwell a short distance away, and upon being apprehended he stated "you guys have my ammo and that's all you're getting, you won't find my gun." Hudson would later admit to firing the shots, but claimed that he did so as a "warning" because the other man was reaching for something in his waistband.

## II. Procedural History

On April 4, 2014, a federal grand jury indicted Hudson for possession of ammunition by a felon. The indictment included notice that the government intended to classify Hudson as an armed career criminal, specifying five separate prior Massachusetts convictions.[3] See 18 U.S.C. § 924(e). Prior to his October 14,

---

the shots were fired in the air and that there were no children around.

[3] The convictions were for:

- Assault and Battery
- Possession of Drugs with Intent to Distribute
- Assault to Rob and Assault and Battery with a Dangerous Weapon
- Unarmed Robbery

2014 sentencing, Hudson objected to a recommendation in the PSR that he be designated as an armed career criminal. At sentencing, the court identified three of the five enumerated offenses as qualifying convictions for violent crime under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), and the sentencing judge imposed a 216-month incarcerative term followed by 5 years of supervised release.

One of the three predicate convictions on which the district court relied was a 1997 conviction for larceny from a person, see Mass. Gen. Laws ch. 266, § 25. But that offense had qualified as a predicate under the residual clause of the ACCA, a provision subsequently invalidated by the Supreme Court. See Johnson v. United States (Johnson II), ___ U.S. ___, 135 S.Ct. 2551, 2557 (2015) (holding the residual clause of the ACCA unconstitutionally vague). The government does not argue that the larceny conviction would otherwise qualify as a predicate offense, but rather seeks to substitute in its place a different Massachusetts conviction for assault with a dangerous weapon ("ADW"). In this timely appeal, Hudson argues that both his ADW conviction and a prior conviction for possession of drugs with

---

- Assault with a Dangerous Weapon and Assault and Battery

- 4 -

intent to distribute them do not qualify as predicate offenses under the ACCA.[4]

### III. Analysis

The ACCA requires the imposition of more severe sentences on repeat offenders when they are convicted of certain new crimes. See 18 U.S.C. § 924. In this case, if Hudson has "three previous convictions . . . for a violent felony or a serious drug offense, or both," then a mandatory 15-year prison sentence and other sentencing enhancements follow. Id. § 924(e)(1). Whether a prior conviction qualifies as a "serious drug offense" or a "violent felony" under the ACCA is a question of law, and where, as here, the question is preserved, we undertake a de novo review. See United States v. Holloway, 630 F.3d 252, 256 (1st Cir. 2011); United States v. McKenney, 450 F.3d 39, 42 (1st Cir. 2006).

### A.   Possession with Intent to Distribute

The ACCA defines a "serious drug offense" as:

> [A]n offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance . . . for which a maximum term of imprisonment of ten years or more is prescribed by law[.]

---

[4] Hudson does not challenge the district court's inclusion of his prior conviction for assault to rob as a qualifying predicate offense under the ACCA.

- 5 -

18 U.S.C. § 924(e)(2)(A)(ii). Hudson challenges the district court's finding that a Massachusetts conviction for possession with intent to distribute a "class B substance" qualifies as a "serious drug offense."[5]

In arguing that this conviction does not qualify, Hudson focuses on the bifurcated nature of the sentences provided for in the state statute. See Mass. Gen. Laws ch. 94C, § 32A(a). That statute, like many other felony statutes in Massachusetts, provides for concurrent jurisdiction in the district and superior courts. At the discretion of the district attorney, a defendant (such as Hudson) charged with possession with intent to distribute a class B substance may be prosecuted in either venue. If the defendant's case remains in the district court, then the maximum term of incarceration is two and one-half years in the house of corrections; indictment and prosecution in the superior court subjects a defendant to a maximum of ten years in state prison. See id. Because he was prosecuted in the district court, Hudson argues that he was not subject to a "maximum term of imprisonment of ten years or more," as required by the ACCA. That claim, however, is foreclosed by circuit precedent. In United States v. Moore, we held that conviction under Mass. Gen. Laws ch. 94C,

_____

[5] Hudson's PSR specified that his possession with intent conviction was for a class B substance. See Mass. Gen. Laws ch. 94C, § 32A(a).

§ 32A(a) qualifies as a "serious drug offense" irrespective of which Massachusetts court entered the conviction. 286 F.3d 47, 48-50 (1st Cir. 2002)

When a claim runs headlong into circuit precedent, our law of the circuit doctrine must be confronted. That doctrine "dictates that '[i]n a multi-panel circuit . . . newly constituted panels ordinarily are constrained by prior panel decisions directly (or even closely) on point." Holloway, 630 F.3d at 258 (quoting United States v. Guzman, 419 F.3d 27, 31 (1st Cir. 2005)). Absent special circumstances, we are duty bound to follow our prior holding. See United States v. Chhien, 266 F.3d 1, 11 (1st Cir. 2001) (listing exceptions).

Hudson offers no new or previously unaddressed reason to deviate from our prior holdings on the issue. He argues only that the Supreme Court's decision in United States v. Rodriguez, 553 U.S. 377 (2008), represents a shift in authority that requires us to revisit Moore. This argument is not a novel one; we have already held that there is "nothing in the Supreme Court's intervening decision in United States v. Rodriguez to require us to revisit" our holding in Moore. United States v. Weekes, 611 F.3d 68, 72 (1st Cir. 2010) (citation omitted). Accordingly, a Massachusetts conviction for possession with intent to distribute a class B substance continues to qualify as a "serious drug offense" under the ACCA.

**B.    Assault with a Dangerous Weapon**

The government maintains that Hudson's prior felony conviction for Assault with a Dangerous Weapon, Mass. Gen. Laws ch. 265, § 15B(b), also qualifies as a predicate "violent felony" under the ACCA.  See 18 U.S.C. § 924(e)(2)(B).  Although the ACCA's residual clause is no longer effective, the government argues that a Massachusetts ADW conviction fits within the ACCA's "force clause" (also referred to as the "elements clause").

The force clause requires that a qualifying conviction stem from a crime punishable by more than one year in prison "that has as an element the use, attempted use, or threatened use of physical force against the person of another." Id.  The Supreme Court defines the phrase "physical force" within the context of the force clause to "mean[s] violent force - that is, force capable of causing physical pain or injury to another person."  Johnson v. United States (Johnson I), 559 U.S. 133, 140 (2010).

In determining whether a prior state conviction qualifies as a violent felony under the ACCA, we apply the "categorical approach, looking only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions."  Taylor v. United States, 495 U.S. 575, 600 (1990).  We thus "may consider only the offense's legal definition, foregoing any inquiry into how the defendant may have

committed the offense."  Holloway, 630 F.3d at 256 (citing Begay

v. United States, 553 U.S. 137, 141 (2008)).[6]

Massachusetts law provides that "[w]hoever, by means of

a dangerous weapon, commits an assault upon another shall be

punished . . . ."  Mass. Gen. Laws ch. 265, § 15B(b).  And we have

held that a Massachusetts ADW conviction qualifies as a predicate

offense under the force clause of the ACCA.  See United States v.

Am, 564 F.3d 25, 33-34 (1st Cir. 2009).  As noted earlier, however,

intervening authority, such as a Supreme Court decision, can

undermine a once well-settled holding.  Hudson argues that

intervening authority renders Am unpersuasive and urges us to

undertake a new categorical analysis.  He suggests two separate

reasons why his ADW conviction now falls outside the bounds of the

force clause: 1) because the statute lacks the necessary element

of "physical force," and 2) because the statute fails to require

a sufficient mens rea.

Hudson first argues that, because a Massachusetts ADW

constitutes an attempted or threatened battery, and because in

Massachusetts a battery can be committed with a "mere touching,

---

[6] The government does not suggest that the statute of
conviction is divisible, see Descamps v. United States, ___ U.S.
___, 133 S. Ct. 2276, 2281, 2293 (2013), and consequently that
there is any need to examine so-called Shepard documents, see
Shepard v. United States, 544 U.S. 13, 26 (2005).  Accordingly,
Hudson's claim will rise or fall on a categorical inquiry, rather
than on the modified categorical approach.

however slight," United States v. Fish, 758 F.3d 1, 9 (1st Cir. 2014) (internal citation and quotation marks omitted), ADW necessarily lacks the requisite level of physical force. The argument thus identifies the combination of the Supreme Court's decision in Johnson I (violent force required) and our observation in Fish that battery may be accomplished by mere touching as abrogating Am. We have already directly addressed and rejected this same argument. See United States v. Whindleton, 797 F.3d 105, 115-16 (1st Cir. 2015) (holding that "ADW can be a violent felony under the [f]orce [c]lause, even if simple assault is not, by virtue of the additional dangerous-weapon element.").

The same law of the circuit principles that guide our analysis with respect to the drug conviction apply equally to this claim. Hudson points to no post-Whindleton authority that would require us to revisit our prior holding, and we see no good reason to do so. Thus, we reaffirm that a Massachusetts ADW conviction meets the physical force requirement under the force clause of the ACCA.

Hudson's second theory, which also relies on Fish, is that his ADW conviction does not qualify as a predicate offense because the Massachusetts ADW statute does not require a sufficient mens rea. In Fish, we held that a prior Massachusetts conviction for assault and battery with a dangerous weapon ("ABDW"), see Mass. Gen. Laws ch. 265, § 15A(b), did not qualify as a "crime of

- 10 -

violence" as defined in 18 U.S.C. § 16(b). See 758 F.3d at 17. Fish's analysis applied the principles first espoused by the Supreme Court in Leocal v. Ashcroft, 543 U.S. 1, 9-10 (2004), wherein the Court held that "use" as contained within a similarly worded federal statute[7] requires "active employment" and thus does not encompass crimes that may be committed with a mens rea of negligence or less. Fish determined that, because a Massachusetts ABDW can be committed with "the intentional commission of a reckless act" it "falls short of the mens rea required" for use of physical force. 758 F.3d at 16. Reasoning from Leocal, the majority in Fish observed that "sister circuits have concluded . . . that section 16(b) does not reach recklessness offenses," and "[o]n the force of Leocal's logic, we hold the same." Id. at 9-10. Hudson seeks to apply Fish's mens rea analysis to disqualify his ADW conviction.

In Whindleton we left open the question of whether, in light of Fish, "ADW fails to qualify as a violent felony under the ACCA because it lacks any requirement that the use or threat be intentional." Whindleton, 797 F.3d at 116 n.12. We now conclude that under Massachusetts decisional law an ADW conviction requires

---

[7] Fish and Leocal dealt with the interpretation of 18 U.S.C. § 16. The Supreme Court has noted that section 16 is "very similar to § 924(e)(2)(B)(i)." Johnson I, 559 U.S. at 140. To the extent that Hudson relies on a section 16 analysis to inform his ACCA claim, we assume without deciding that a similar bridge can be built between the mens rea requirements of the two sections.

that the use or threat of physical force be intentional. Commonwealth v. Porro, 939 N.E.2d 1157, 1163-64 (Mass. 2010). Thus, we hold that a conviction under Mass. Gen. Laws ch. 265, § 15B(b) includes a mens rea requirement sufficient to qualify the conviction as a predicate under the ACCA's force clause.[8]

The Massachusetts cases observe that "an assault may be perpetrated in either of two ways[:] the crime may consist of 'an attempted battery' or 'an immediately threatened battery.'" Commonwealth v. Melton, 763 N.E.2d 1092, 1096 (Mass. 2002) (quoting Commonwealth v. Gorassi, 733 N.E.2d 106 (Mass. 2000)). For convictions under either theory, proof of specific intent is required. See e.g., Commonwealth v. Musgrave, 649 N.E.2d 784, 787-88 (Mass. App. Ct. 1995) aff'd 659 N.E.2d 284 (Mass. 1996).

---

[8] Hudson's claim that ADW lacks a sufficient mens rea requirement to qualify as a predicate offense is grounded in his assertion that ADW is a general intent crime in Massachusetts. That conclusion is based on a mistaken interpretation of dicta contained within our decision in Am. At one point, Am refers to ADW as a "general intent" crime, accompanied by a citation to Commonwealth v. Ford, 677 N.E.3d 1149, 1151 (Mass. 1997). See Am, 564 F.3d at 34. Ford, however, dealt not with ADW, but with assault and battery by means of a dangerous weapon, ABDW. See Ford, 677 N.E.3d at 1151. To accept Hudson's reading of Am would be to ignore our reasoning in that case accompanying the "general intent" label. See Am, 564 F.3d at 33-34. Although ABDW may be committed recklessly, we made clear in Am that ADW cannot be, holding that "because the state . . . had to show Am acted intentionally, his conviction for [ADW] thus constituted a 'crime of violence' for purposes of career offender status." Id. at 34 (emphasis added); cf. Commonwealth v. Jones, 383 N.E.2d 527, 533 n.8 (Mass. 1978) (holding that "assault and battery by means of a dangerous weapon is a crime requiring general intent." (citing Commonwealth v. Randall, 4 Gray 36, 38-39 (Mass. 1855))).

Under the threatened battery variant, "conviction of assault by means of a dangerous weapon requires proof of an overt act undertaken with the intention of putting another person in fear of bodily harm and reasonably calculated to do so, whether or not the defendant actually intended to harm the victim." Commonwealth v. Domingue, 470 N.E.2d 799, 802 (Mass. App. Ct. 1984). Thus, in order to meet its burden at trial, the Commonwealth must show that "the defendant intended to place the victim in fear of an imminent battery" with a dangerous weapon. Porro, 939 N.E.2d at 1163. This intent requirement fits squarely within the ACCA's definition of "threatened use" of physical force as contemplated in 18 U.S.C. § 924(e)(2)(B)(i).

Similarly, "[u]nder the attempted battery theory, the Commonwealth must prove that the defendant intended to commit a battery, took some overt step toward accomplishing that intended battery, and came reasonably close to doing so." Melton, 763 N.E.2d at 1096. It follows that "[a] defendant must intend a battery to be guilty under the attempted battery theory." Porro, 939 N.E.2d at 1163. Thus, a conviction for ADW under this variant necessarily entails the "attempted use . . . of physical force" as required by 18 U.S.C. § 924(e)(2)(B)(i).

The cases also make clear that a mens rea of recklessness is not enough to support an ADW conviction. ADW requires specific intent, because "the central aspect of an assault is an attempted

- 13 -

application of physical force or a threat of the use of physical force, either by an attempt to do bodily harm, or by placing the victim in fear of imminent bodily harm." Gorassi, 733 N.E.2d at 110. This framework, coupled with the "additional dangerous-weapon element," Whindleton, 797 F.3d at 115, places a Massachusetts ADW conviction within the language of § 924(e)(2)(B)(i). Accordingly, a Massachusetts ADW conviction meets both the physical force and mens rea requirements necessary to qualify as a predicate offense under the ACCA's force clause.

## C. Sentencing Guidelines Calculation

The district court sentenced Hudson to an incarcerative term of 216 months, within an advisory GSR of 188-235 months. As previously discussed, however, after the sentencing in this case was concluded, the Supreme Court decided Johnson II. The government concedes that Johnson II's invalidation of the ACCA's residual clause renders erroneous the sentencing court's calculation of the applicable sentencing range. Despite this concession, the government maintains that the sentence should nevertheless be affirmed.

First, the government accepts that Johnson II's holding that the ACCA's residual clause is unconstitutionally "vague in all its applications," 135 S. Ct. at 2561, invalidates the district court's application of United States Sentencing Guidelines ("USSG") §4B1.4(b)(3)(A) to set a Base Offense Level (BOL) of 34.

- 14 -

That section of the armed career criminal guideline requires a finding that a defendant "used or possessed the . . . ammunition in connection with . . . a crime of violence." In turn, the definition of "crime of violence" applicable to the sentencing in this case is found in USSG §4B1.2(a)(2), the residual clause of the career offender guideline.[9]  As that definition of "crime of violence" is the same as in the ACCA, the government acknowledges that it is invalid after Johnson II.  See, e.g., United States v. Winter, 22 F.3d 15, 18 n.3 (1st Cir. 1994) (noting "substantial similarity" between the ACCA and §4B1.2 and that "interpreting one phrase frequently is found to be persuasive in interpreting the other phrase").  The government and Hudson agree that, instead, the armed career criminal guideline's default offense level should be applied in this case. See USSG §4B1.4(b)(3)(B).  The parties agree that the appropriate BOL is therefore 33, and, after a reduction for acceptance of responsibility, Hudson's total offense level (TOL) should be 30, rather than the 31 that was assigned at sentencing.

Second, the government says that Johnson II also operates to invalidate Hudson's placement in Criminal History Category (CHC) VI, again because that determination relied upon the career offender guideline's definition of crime of violence.

---

[9] The government expressly eschews reliance on the career offender guideline's force clause, §4B1.2(a)(1).

- 15 -

See id. §4B1.4(c)(2). The parties agree that CHC V is appropriate, and that combining the correct TOL of 30 with CHC V yields a proper GSR calculation of 151-188 months' imprisonment rather than the GSR of 188-235 months calculated at sentencing. For purposes of this appeal, we accept the government's concessions, but after accepting them we vacate and remand for resentencing.

Hudson did not object to the guidelines calculations at sentencing, so we review for plain error. See e.g., United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001). Having conceded error, see United States v. Paneto, 661 F.3d 709, 715 (1st Cir. 2011)(a sentencing court "is obligated to calculate the GSR correctly"), the government argues only that Hudson's substantial rights have not been affected.[10]

In a sentencing appeal under plain error review, to show that an error affected his substantial rights, a defendant must demonstrate "a reasonable likelihood 'that, but for the error, the district court would have imposed a different, more favorable sentence.'" United States v. Ortiz, 741 F.3d 288, 293-94 (1st Cir. 2014) (quoting United States v. Turbides-Leonardo, 468 F.3d

_____

[10] Ordinarily, to benefit from plain error review, an appellant must establish that "(1) an error occurred which was (2) clear or obvious and which not only (3) affected his substantial right but also (4) seriously impaired the fairness, integrity, or public reputation of the judicial proceedings." United States v. Savarese, 686 F.3d 1, 12 (1st Cir. 2012).

34, 39 (1st Cir. 2006)). Relevant to Hudson's claim, the Supreme Court has observed recently that "[w]hen a defendant is sentenced under an incorrect guidelines range -- whether or not the defendant's ultimate sentence falls within the correct range -- the error itself can, and most often will, be sufficient to show a reasonable probability of a different outcome absent the error." Molina-Martinez v. United States, ___ U.S. ___, 136 S. Ct. 1338, 1345 (2016); see also Ortiz, 741 F.3d at 294 (noting that "a calculation error that artificially increases the GSR is unlikely to be harmless"). Our approach has been to attempt to discern whether there exists "a 'clear statement by the [sentencing] court' that would be sufficient to 'diminish the potential of the [Guideline Sentencing Range] to influence the sentence actually imposed.'" United States v. Marchena-Silvestre, 802 F.3d 196, 201 (1st Cir. 2015) (quoting Ortiz, 741 F.3d at 294). If such a clear statement exists, then we may affirm the sentence. See Molina-Martinez, 136 S. Ct. at 1346-47.

In announcing the sentence, the district judge described Hudson's crime as "quite serious" and stated that "[f]iring multiple rounds of ammunition at point-blank range at any person is absolutely outrageous." The court observed that "[t]his is not a situation in which you simply were found to be in possession of ammunition or in possession of a firearm as a felon." Moreover, the court made repeated references to Hudson's extensive criminal

history and the need to keep the community safe. And finally, when addressing Hudson's request for a variance below the guidelines range, the court stated:

> I see no basis to vary from the [GSR] in this case, certainly [none] to vary underneath the guidelines in this case, and considering [Hudson's] personal circumstances and the nature and circumstances of this particular offense, I conclude that a sentence of about the middle [of] that range is appropriate.

These observations, though appropriately severe, do not suggest to us that the court intended to untether Hudson's sentence from the GSR that had been calculated. On the contrary, it appears that the sentencing court may well have "used the GSR as an anchoring point" to reach its 216-month sentence. Ortiz, 741 F.3d at 294. While the court viewed Hudson's conduct as reprehensible and noted his extensive criminal history, it nonetheless chose a sentence well within the incorrectly calculated GSR.

Finding no clear contrary expression in the record, the "district court's evident intent to sentence" Hudson to a within-guidelines sentence is an insufficient basis to "demonstrate that the district court's failure" to calculate correctly the "sentencing range did not affect the sentence it imposed." United States v. Tavares, 705 F.3d 4, 27-28 (1st Cir. 2013). With a correctly calculated GSR "there is at least a reasonable likelihood that the [district court] would have landed on" a shorter sentence, and "[n]othing in this record provides any indication clear enough

to overbear the probative force of this logical presumption." Marchena-Silvestre, 802 F.3d at 202.

## IV. Conclusion

Hudson's convictions for possession with intent to distribute and assault with a dangerous weapon qualify as predicates under the Armed Career Criminal Act, but we vacate his guidelines sentence for the reasons stated above. Accordingly, the judgment of the district court is **affirmed in part, vacated in part**, and **remanded** for resentencing consistent with this opinion.

**So ordered.**