FISHER, Circuit Judge,
dissenting.
The majority holds that Johnson v. United States, — U.S. -, 135 S.Ct. 2551, 192 L.Ed.2d 569 (2015), invalidates the residual clause of United States Sentencing Guideline § 4B1.2, removing Michael Calabretta’s status as a career offender. I agree with this portion of the majority’s opinion.[1]
But, that is where my agreement with the majority ends, as based on the sentencing record, the majority also finds that the District Court plainly erred when it considered Calabretta’s now-removed career offender status in imposing its sentence. Though I agree that Johnson should apply in this case and that Calabretta no longer meets the career offender criteria, I disagree that the District Court’s careful and thoughtful analysis at sentencing,' which concluded in a sentence of 120 months’ imprisonment, was plainly erroneous. I dissent specifically to address the erosion of the doctrine of plain error review in our Circuit.
Michael Calabretta is no smalltime marijuana dealer, just selling some of his stash to a few Mends to support a habit or to make ends meet. Rather, for more than two-and-a-half years, he participated in an extensive cross-country conspiracy that distributed over 100 kilograms of marijuana and he personally laundered more than ten million dollars in drug sale proceeds.
In spite of this formidable backdrop, Calabretta asks us to find that the District Court plainly erred when it imposed a 120 months’ sentence, a sentence that was well below the career offender Guidelines range and can only be viewed as an act of leniency — the maximum leniency the District Court felt was deserved. We should not *143 grant his request because, as the District Court clearly found, Calabretta’s sentence was the “minimum sentence sufficient.” J.A. 143.
If a defendant fails to timely object at the time a sentence is pronounced, as Cal-abretta failed to, the unpreserved issue is reviewed for plain error. United States v. Flores-Mejia, 759 F.3d 253, 259 (3d Cir. 2014). In order to satisfy the first three prongs of plain error, an appellant must establish that an error occurred, that the error was clear or obvious, and the error affected his substantial rights. If those requirements are met, we move to the fourth prong and determine if the “error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.” United States v. Marcus, 560 U.S. 258, 262, 130 S.Ct. 2159, 176 L.Ed.2d 1012 (2010) (internal quotation marks omitted). If after.a fact-intensive analysis we determine that the fourth prong has been established, we have the discretion to remedy the error. Puckett v. United States, 556 U.S. 129, 135, 129 S.Ct. 1423, 173 L.Ed.2d 266 (2009).
Here, the fourth prong has not been met. The District Court based its sentence on Calabretta’s serious and extensive underlying and prior criminal conduct, not on his career offender status — and it specifically found that 120 months’ incarceration was the minimum sentence it would impose. This is not an unfair sentence. Nor is it one that will affect the integrity or public reputation of the judiciary. Further, the majority’s holding is troubling because the plain error test, specifically its fourth prong, requires stringent application. This holding will not only affect Calabretta but may affect future proceedings: a broadened plain error analysis will now apply in these cases. I therefore respectfully dissent from the majority’s decision to remand for resentencing.
I.
Calabretta has a significant criminal history, and he committed a serious crime. The District Court carefully considered these concerns and the other factors under 18 U.S.C. § 3553(a) and determined that, despite the career offender Guidelines range (that it erroneously found applied), a 120 months’ sentence was sufficient but was the minimum' sentence sufficient. Where the District Court provides this type of specificity, remand is not required.
In considering Calabretta’s sentence under the fourth prong, we must remember that remand is a discretionary action that we may take only after a full review of the underlying facts. There is no basis for exercising our discretion where evidence otherwise overwhelmingly supports the trial court’s finding or is conclusive. United States v. Vazquez, 271 F.3d 93, 106 (3d Cir.2001). Although a scant record cannot uphold a sentence based on an erroneous Guidelines range, “[t]he record in a case may show ... that the district court thought the sentence it chose was appropriate irrespective of the Guidelines range. Judges may find that some cases merit a detailed explanation of the reasons the selected sentence is appropriate.” Molina-Martinez v. United States, — U.S. -, 136 S.Ct. 1338, 1346, 194 L.Ed.2d 444 (2016). This rule of analysis, penned by the Supreme Court in its recent decision in Molinar-Martinez, is based on evidence that indicates the Guidelines are heavily relied upon by district courts in arriving at a sentence — in most cases.
The Supreme Court observed that in a majority of cases, absent a Government motion, district courts imposed sentences *144 within the adopted Guidelines range.[2] This case is an outlier. And, the record provides a clear picture of what the District Court intended. Calabretta was subject to, based on the incorrectly calculated Guidelines range, 188 to 235 months’ imprisonment. If § 4B1.2 had not applied, Calabretta’s Guidelines range would have been 108 to 135 months’ imprisonment. Ultimately, Calabretta was sentenced within the applicable Guidelines range that would have applied without the career offender enhancement, receiving a sentence of 120 months’ imprisonment. This sentence was outside of the career offender Guidelines range by almost six years and was not the product of a Government motion. Calabret-ta’s sentence is thus in the minority of cases cited in Molina-Martinez and upholding it would not garner ridicule of this Court.
This is unlike a case our sister court grappled with after Molina-Martinez. In United States v. Hudson, 823 F.3d 11 (1st Cir.2016); the First Circuit found plain error where the defendant received a sentence that was within an erroneously calculated Guidelines range, despite the district court’s consideration of the defendant’s “quite serious” conduct and extensive criminal history. Id. at 18-19. The Hudson court made this finding, however, because the career offender Guidelines range was the “anchoring point” for the imposed sentence. Id. at 19-20. Here, the District Court was aware of the career offender Guidelines range; carefully reviewed Cala-bretta’s substantial underlying conduct, criminal history, and the other statutory sentencing factors; and found that 120 months’ incarceration — a sentence substantially lower than the career offender Guidelines range — was the “minimum sentence sufficient” to suit the 18 U.S.C. § 3553(a) factors. J.A. 143. The career offender Guidelines range was not the anchoring point here, the District Court specifically chose to not apply it to the final sentence.
The majority focuses on the District Court’s failure to specifically state how Calabretta’s career offender designation affected the final sentence, but the record reveals that the District Court provided detailed reasons for how it arrived at the final sentence and why it did not apply the career offender Guidelines range.
Calabretta pleaded guilty to both a distribution offense and a money laundering offense, a plea that allowed him to escape a weightier sentence if the full import of his conduct in the distribution scheme had been considered. At sentencing, the District Court reviewed the underlying investigation which resulted in the recovery of over $1 million from Calabretta’s residence, which was a small part of the earnings from the distribution scheme, and a log book that indicated that Calabretta was involved in laundering drug money through casinos. The District Court found it questionable that Calabretta’s claimed income, which Calabretta said was gambling income, was not a part of the drug distribution scheme..Moreover, the District Court considered the need for deterrence given the purely monetary motivation that drove Calabretta’s conduct, noting that Calabretta and his co-conspirators believed “that moving large amounts of marijuana was a good way to make lots of money and the record reflects that he did that.” J.A. 140.
*145 As for Calabretta’s prior criminal conduct, the District Court found especially-alarming the fact that Calabretta had “two dead people whose deaths are directly attributable to [his], frankly, incredible conduct” of drag racing and road rage. J.A. 141. The District Court also considered Calabretta’s eluding offense, where he drove up ¿n exit ramp the wrong way, as well as other car thefts and burglaries that Calabretta had committed, which were not predicate offenses under § 4B1.2. Cala-bretta’s serious criminal history was bolstered by the fact that he committed the drug distribution offense only five years after he was released from jail on his prior convictions.
The District Court did not focus on Cal-abretta’s career offender status. To the contrary, it specifically determined not to sentence him within the career offender range: “[T]he top of [the Guidelines range] was 235 months.... If I sentence you to the top of that [Guidelines range, you’d be getting out when you were an old man.” J.A. 143. The District Court instead focused on the specific case at hand — Cala-bretta’s significant criminal history and culpability in the underlying offense. It found that it was “satisfied that a very substantial sentence is required here in order to, first of all, deter others who might be inclined to make millions of dollars quickly and easily from doing it; secondly, to get through to [Calabretta] that if [he] thought [he] had reformed, reforming by becoming a drug dealer is not reforming.” J.A. 142. This led the District Court to find that a sentence of 120 months’ imprisonment was the “minimum sentence sufficient” — -a sentence that was well below the career offender Guidelines range.
The majority faults this dissent for its focus on the District Court’s “minimum sentence sufficient” language. The District Court’s “minimum sentence sufficient” statement, however, followed the District Court’s admonition that it would not sentence Calabretta within a Guidelines range that would lead to his release when he was an old man. The Guidelines range that the District Court chose not to apply, to meet that goal, was the career offender Guidelines range. It is therefore more than reasonable to focus on the “minimum sentence sufficient” language because it followed the District Court’s finding that it was not going to sentence Calabretta within the career offender Guidelines range.
Based on the record before us, there is no plain error. Affirming Calabretta’s sentence would not undermine the integrity of this Court. The District Court provided a detailed explanation of the imposed sentence, a sentence unconnected from the Guidelines. The District Court weighed Calabretta’s potential for recidivism, and we should not ignore that consideration when conducting plain error review, especially where the sentence is far removed from the career offender Guidelines range. United States v. Davis, 602 F.3d 643, 652 (5th Cir.2010) (considering the defendant’s continued violations of the- law in upholding'his sentence even though the district court had conducted an erroneous Guidelines calculation at sentencing).[3]
The sentence imposed by the District Court fell within the now-applicable Guidelines range. The majority argues that the potential applicability of Amendment 782,[4] *146 which would make Calabretta’s 120 months’ sentence fall outside of the Guidelines range, should change the analysis in this case. But it does not. Calabretta’s Guidelines range would be 87 to 108 months after applying Amendment 782. Calabretta would be eligible to receive a sentence of 87 months’ imprisonment if the District Court, through its discretion, found that sentence to be appropriate. The majority asserts that because of this amended Guidelines range, the District Court could also decide to impose a sentence as low as 60 months, the mandatory minimum sentence for Calabretta’s charged conduct. We cannot predict what the District Court will do. The majority is attempting to undertake such a prediction while, at the same time, arguing that I am undergoing a speculative analysis by relying on the District Court’s actual words during sentencing. The majority cannot have it both ways.
The large disparity between the prior applicable Guidelines range and the sentence imposed, a variance sentence without a Government motion, supports a finding under Molina-Martinez that the District Court gave a fair sentence that was unaffected by the career offender designation. Instead, the sentence was motivated by Calabretta’s own conduct and was the “minimum sentence sufficient” to deter such conduct in the future. Still, the majority cites two of our opinions and a Tenth Circuit opinion in support of its position that such a finding would be “speculative.” These cases — United States v. Zabielski, 711 F.3d 381 (3d Cir.2013), United States v. Tai, 750 F.3d 309 (3d Cir.2014), and United States v. Madrid, 805 F.3d 1204 (2015) — actually support affirmance.
Zabielski was determined under a harmless error analysis and is distinguishable from our analysis here, which is more stringent. Even if generally applicable, we held that “an error is more likely to be harmless when it is clear from the record that the district court decided to vary from the advisory Guidelines range.” Zabielski, 711 F.3d at 388. It is clear from the sentencing record, for the reasons above, that the District Court was not considering the career offender Guidelines range. The majority’s assertion that affirming would be based on “speculation” is unsubstantiated.
Tai is unhelpful to the majority for the same reasons. We held in Tai that where the record fails to provide guidance as to why a particular enhancement was provided, and the proper fact finding regarding that enhancement is not undertaken, this Court may find that the integrity of the proceedings are affected. Tai, 750 F.3d at 319-20. Under such circumstances, this Court cannot speculate as to what facts were considered by the district court. Id. at 320. Again, the record here provides guidance. The District Court reviewed the underlying circumstances, disregarded the career offender Guidelines range, and sentenced Calabretta well below the erroneous range.
Finally, in Madrid, the Tenth Circuit applied Johnson to Madrid, a defendant that had erroneously been found to be a career offender. The court focused on Madrid’s sentence of 188 months, a sentence at the lowest end of the erroneous career offender Guidelines range. The court found that the fourth prong had been met because the “correct application of the sentencing laws would likely significantly reduce the length of the sentence” because the now-applicable Guidelines range was 92-115 months. Madrid, 805 F.3d at 1212 (internal quotation marks omitted). The facts are distinguishable here. Calabretta was subject to a sentence within the lower, applicable Guidelines range and the District Court chose to forego a career offender sentence, opting to instead sentence *147 Calabretta to 120 months, the “minimum sentence sufficient.”
This Court should not fall into a trap of finding that every sentence that applied § 4B1.2’s residual clause requires a remand. I am not suggesting that the fourth prong will never be met if Johnson is applied to others who were incorrectly found to be career offenders. But the sentence that Calabretta received is neither unfair nor will it undermine confidence in the judiciary. Consequently, I cannot assent to the majority finding otherwise.
II.
Given the record before us, I believe the majority fails to adhere to this Court’s duty to narrowly apply the plain error rule, especially once it reaches the fourth prong. We must be forward thinking and look not only at the underlying proceeding but also to how future judicial proceedings will be affected by our plain error analysis in each case. United States v. Escalante-Reyes, 689 F.3d 415, 457 n.22 (5th Cir. 2012) (Smith, J., dissenting). The majority’s conclusion that the fourth prong has been met in this case will affect future judicial proceedings by broadening the application of plain error review. Review which has already been eroding.[5]
This prong must be applied vigorously even where an error is found because of an intervening Supreme Court decision. United States v. Gonzalez-Huerta, 403 F.3d 727, 737 (10th Cir.2005) (discussing the applicability of Johnson v. United States, 520 U.S. 461, 470, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997)). Consequently, it is important to carefully consider the fourth prong because “[rjeversal for error, regardless of its effect on the judgment, encourages litigants to abuse the judicial process and bestirs the public to ridicule it.” Johnson, 520 U.S. at 470, 117 S.Ct. 1544 (citation omitted).
This public ridicule and encouragement of abuse of process is precisely what we must be aware of in ordering remand in this case. Even if Calabretta’s substantial rights were affected, this “cannot, ‘without more,’ satisfy the fourth prong of the plain-error analysis, ... and the Supreme Court has instructed that we are authorized ‘to' correct only particularly egregious errors’ on plain-error review.” United States v. Corso, 549 F.3d 921, 931 (3d Cir.2008) (quoting United States v. Young, 470 U.S. 1, 15, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985) (internal citation omitted)).
In sentencing matters, this means that we must consider the effect that a too low *148 or too high sentence may have. For instance, a sentence that is too-low will deny the public of its entitlement to a sufficient sentence, but one that is too-high will deny a defendant a certain amount of freedom. United States v. Williams, 399 F.3d 450, 456 (2d Cir.2005). Here, the District Court specifically stated that imprisonment of 120 months was the “minimum sentence sufficient” based on Calabretta’s criminal history and his underlying conduct while discounting the career offender Guidelines range. Calabretta received leniency at the sentencing phase, a leniency that he likely did not deserve, but the District Court made clear this was the only break that Calabretta was entitled to.
It is hard to determine what record, if not the one here, would not meet the majority’s standard for plain error. A district court will now be required to specifically say, no matter what happens in the future, the sentence imposed is the only sentence it would give within its discretion. I do not believe that we should implement this rule. We must be especially cognizant of this consideration and ensure that plain error is found only in “exceptional circumstances [for] particularly egregious errors,” is “used sparingly,” and is not collapsed into a harmless error analysis. Escalante-Reyes, 689 F.3d at 433, 435. When applying the specific facts in this case, I believe that the majority has lost sight of the stringent test we must apply.
III.
I dissent in order to caution this Court to review how the facts in this case will impermissibly broaden the doctrine of plain error review. The District Court’s reasoned analysis at sentencing, and careful consideration of the correct sentence for a weighty drug dealer, requires Cala-bretta’s sentence of 120 months’ imprisonment to stand, and remand, accordingly, should not be granted.

. As the majority notes, Johnson’s application to § 4B1.2 was considered by the Eleventh Circuit in United States v. Matchett, 802 F.3d 1185 (11th Cir.2015). The Matchett court was concerned that other sections of the Guidelines may be invalidated if the void-for-vagueness doctrine is applied to § 4B1.2 via Johnson and rejected the petitioner's argument that Johnson invalidates § 4B1.2’s residual clause. I recognize Judge Pryor’s well-written opinion and the possible future consequences the adoption of Johnson may have. See also United States v. Ellis, 815 F.3d 419, 422 (8th Cir.2016) (finding that it is not "obvious that the guidelines are susceptible to a constitutional vagueness challenge”).
On the other hand, several circuits and this Court — as outlined by the majority — have applied ACCA holdings to identically-worded sections of the Guidelines, including those courts that have already considered Johnson and applied it to § 4B1.2. Accordingly, based on our precedent, I join the majority in applying Johnson.

. "In less than 20% of cases since 2007 ... district courts imposed above- or below-Guidelines sentences absent a Government motion ... [a] realit[y] that has led the Court to observe that there is considerable empirical evidence indicating that the Sentencing Guidelines have the intended effect of influencing the sentences imposed by judges.” Id. (internal quotation marks omitted).

. The Fifth Circuit upheld Davis’s consideration of recidivism as a factor in denying a plain error claim after Molina-Martinez in United States v. Martinez-Rodriguez, 821 F.3d 659, 664-67 (5th Cir.2016).

. Calabretta’s non-career offender status will allow him to seek a sentence that comports with Amendment 782 pursuant to 18 U.S.C. § 3582(c)(2).

. Several of this Court’s cases have resulted in remand based on a finding of plain error. A sampling of these cases is set forth below. In these' cases, we either (1) did not include a fourth prong analysis, or (2) included only a sentence or less of analysis under the fourth prong. This is why it is important that this dissent focus on the fourth prong and that a finding of plain error should be a rarity. Those cases are cited here:
United States v. Angell, 588 Fed.Appx. 161 (3d Cir.2014); United Stales v. Stinson, 734 F.3d 180 (3d Cir.2013); United States v. Butler, 531 Fed.Appx. 241 (3d Cir.2013); United States v. Hill, 468 Fed.Appx. 133 (3d Cir. 2012); United States v. Rose, 365 Fed.Appx. 384 (3d Cir.2010); United States v. Guinto, 345 Fed.Appx. 831 (3d Cir.2009); United States v. Polk, 577 F.3d 515 (3d Cir.2009); United States v. Berry, 553 F.3d 273, 286 (3d Cir.2009); United States v. Langford, 516 F.3d 205 (3d Cir.2008); United States v. Voelker, 489 F.3d 139 (3d Cir.2007); United States v. Wood, 486 F.3d 781 (3d Cir.2007); United States v. Grier, 475 F.3d 556 (3d Cir.2007); United States v, Dickerson, 381 F.3d 251 (3d Cir.2004); United States v. Broskoskie, 66 Fed.Appx. 317 (3d Cir.2003); United States v. Syme, 276 F.3d 131 (3d Cir.2002); United States v. Latimer, 54 Fed.Appx. 105 (3d Cir. 2002); United States v. Knight, 266 F.3d 203 (3d Cir.2001); United States v. Pollen, 978 F.2d 78 (3d Cir.1992); United States v. Evans, 155 F.3d 245 (3d Cir.1998).