# United States Court of Appeals

## For the First Circuit

No. 07-1698

UNITED STATES OF AMERICA,

Appellee,

v.

MATTHEW MARSH,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. F. Dennis Saylor, IV, U.S. District Judge]

Before

Lynch, Chief Judge,

Merritt[*] and Howard, Circuit Judges.

Alan Jay Black for appellant.
Lisa M. Asiaf, Assistant United States Attorney, with whom
Michael J. Sullivan, United States Attorney, was on brief, for
appellee.

April 1, 2009

---

[*]Of the Sixth Circuit, sitting by designation.

**HOWARD**, **Circuit Judge**.  Matthew Marsh ("Marsh") pled guilty to three counts of distributing and conspiring to distribute crack cocaine.  He was sentenced to a total of eleven years' imprisonment.  The sentence was comprised of a statutory mandatory minimum of ten years and an additional year resulting from an upward departure from the applicable Sentencing Guidelines range.  The departure was based on conduct underlying certain state-court convictions that had been vacated less than two weeks prior to Marsh's federal sentencing.  This appeal is limited to Marsh's claim that the one-year upward departure was improper, and thus that his sentence was unreasonable.  We affirm, and in so doing, we reject the dissent's view that the district court impermissibly considered the conduct underlying the vacated convictions.

## I.

As this appeal focuses exclusively on Marsh's sentencing, we will often refer to, and liberally borrow from, the district court's published sentencing memorandum.  United States v. Marsh, 486 F. Supp. 2d 150 (D. Mass. 2007).  In April 2005, a federal investigation into crack cocaine sales in the Fitchburg, Massachusetts area led to Marsh's indictment on charges of conspiracy to distribute cocaine base (Count 1), distribution of cocaine base, and aiding and abetting distribution (Counts 2 and 3).[1]

---

[1]  See 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.

In November 2005, the government filed an information pursuant to 21 U.S.C. § 851, announcing its intention to rely on Marsh's 1996 federal drug conviction to increase his mandatory minimum sentence from five years to ten. See 21 U.S.C. § 841 (b)(1)(B). Approximately a year later, Marsh signed a plea agreement acknowledging both the 1996 conviction and the applicable ten-year mandatory minimum sentence. The plea document also noted -- for purposes of Sentencing Guidelines calculations -- the parties' agreement on the drug weight attributable to Marsh and his acceptance of responsibility. The government agreed to recommend a sentence at the low end of the Guideline range determined by the court, subject to the mandatory minimum sentence. Marsh pled guilty on October 23, 2006, in accordance with the plea agreement.

In January 2007, the probation office issued a presentence report ("PSR"). At first blush, the PSR followed the contours of the plea agreement, and its Guidelines calculation yielded a sentencing range of 70-87 months' imprisonment, a figure which was supplanted by the 120-month mandatory minimum. See U.S.S.G. § 5G1.1(b). But the PSR went further, advising that Marsh was a career offender, pursuant to U.S.S.G. § 4B1.1, and increasing the Guideline sentence from the 120 months contemplated by the plea agreement to a range of 262-327 months. In reaching its conclusion, the PSR relied upon two separate Massachusetts

-3-

convictions for resisting arrest in 2000 and 2004 as predicates to invoke the career offender guideline.[2]

Although Marsh filed a substantive objection to the PSR, he also filed motions in state court to vacate the two resisting arrest convictions, asserting that he was suffering from various psychological disorders at the time he pled guilty in those cases. The motions were supported by an affidavit from a forensic psychologist. The motions were successful, and the state court convictions were vacated nine days before the rescheduled federal sentencing hearing.[3]

In the wake of the vacated state court convictions, the district court identified two specific areas of concern upon which he invited further briefing: whether Marsh's psychological health rendered his federal guilty plea in the instant matter constitutionally deficient; and whether the court could take into consideration the conduct underlying Marsh's now-vacated convictions -- as opposed to the convictions themselves -- in making its sentencing determination. Prior to the hearing, Marsh

---

[2]   As relevant here, a defendant is a career offender if the current conviction is a felony crime of violence or controlled substance offense, and he has at least two prior felony convictions that are either a crime of violence or a controlled substance offense. See U.S.S.G. § 4B1.1(a). Whether the resisting arrest convictions would have properly qualified as "crimes of violence" is not before us on appeal.

[3]   The district court previously granted Marsh's request to continue his sentencing hearing while he sought redress in the state court.

-4-

essentially abandoned any claim that his guilty plea was invalid. The court acknowledged this during the hearing and explicitly found that there was no reason to vacate Marsh's plea. Whether Marsh's mental health invalidated his plea is not before us on appeal.

The court next concluded that it could consider the conduct underlying the vacated state-court resisting arrest convictions.[4] According to the PSR, Marsh's first resisting arrest conviction came in October 1999, when he kicked a police officer who was trying to arrest him for disturbing the peace at a Leominster, Massachusetts restaurant. His second came in April 2004, when he refused to comply with Fitchburg police officers' orders to leave a disturbance at a local pub. The court proceeded to address the impact of these incidents on its sentencing guidelines calculation. As the court first noted, Application Note 6 to U.S.S.G. § 4A1.2 allows the sentencing court to depart upward if a defendant's criminal history category does not adequately take into account the underlying conduct in vacated convictions. In so doing, the Guidelines envision the court employing the "criminal history category applicable to defendants whose criminal history or likelihood to recidivate most resembles the defendant's." See U.S.S.G. § 4A1.3(a)(4)(A). In this case, however, even a departure to the highest criminal history category, VI, combined with Marsh's

---

[4] While Marsh opposed such consideration at sentencing, he has not briefed it on appeal, and thus we deem the issue waived. Negrón-Almeda v. Santiago, 528 F.3d 15, 25 (1st Cir. 2008).

offense level of 23, yielded a sentencing range below the 120-month mandatory minimum, rendering the court's consideration of any such departure moot.

The court then considered moving "vertically" along the offense level axis of criminal history category VI to find an appropriate guideline range, as suggested by U.S.S.G. § 4A1.3(a)(4)(B), but the court ultimately concluded that Marsh's case was not sufficiently "extreme" nor his conduct sufficiently "egregious" to support such a mode of departure. Marsh, 486 F. Supp. 2d at 157 (citing United States v. Hardy, 99 F.3d 1242, 1248 (1st Cir. 1996)).

The court next turned to U.S.S.G. § 5K2.0(a)(1)(A), which allows for upward departures if the court finds "an aggravating . . . circumstance of a kind, or to a degree, not adequately taken into consideration" by the Guidelines. Marsh, 486 F. Supp. 2d at 157. The district court noted that such departures usually involve the offense of conviction, rather than past criminal conduct, id. (citing Hardy, 99 F.3d at 1248), but decided nonetheless that the case was "exceptional" within the meaning of § 5K2.0

> because the guidelines do not contemplate the peculiar constellation of events presented by this case. Although the guidelines contemplate that convictions might be vacated, they do so only in the context of considering whether a criminal history category adjustment is appropriate. The Sentencing Commission does not appear to have considered a situation such as the present one, where convictions have been vacated that might otherwise affect

the sentencing range under the career offender guidelines (but not the range based on the ordinary offense level and the criminal history category), and where there is reliable evidence concerning the conduct underlying the convictions. The Court therefore concludes that there exists here an aggravating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines within the meaning of § 5K2.0(a)(1)(A).

Id. at 158.

In arriving at its ultimate conclusions, the court first noted that it had considered a sentence closer to the career offender guideline, "to avoid rewarding defendant's inconsistent and arguably manipulative positions regarding his mental health, and to treat him in substance as a career offender." Id. The court eschewed this avenue, however, and decided that a more modest upward departure was appropriate, resulting in a sentence closer to the ten-year minimum. Id. The court reasoned that the mandatory minimum sentence did not take into account the conduct underlying the vacated convictions, which the judge described as "violent and anti-social." Id. The court also expressed concern that the minimum sentence would result in "the defendant receiving the exact same sentence that he would have received had he not engaged in that behavior." Id.

The court also noted certain mitigating factors, including the fact that the government -- pursuant to the plea agreement -- was not seeking a departure, that Marsh did have

-7-

mental health issues, and that the two vacated convictions were not deemed serious by Massachusetts authorities, as they were punished with a small fine and seven-months' probation, respectively. Id. 158-59. Taking all these factors into account, the court settled on a twelve-month departure, and thus a sentence totaling 132 months. Id. at 159.

Two other pieces of the district court's sentencing mosaic are relevant to this appeal. First, after announcing the sentence, the court added the following footnote:

> The Court notes that it would impose the same sentence as a non-guideline sentence under 18 U.S.C. § 3553(a). In particular, the sentence imposed protects the public from further crimes by defendant; provides him with necessary mental health treatment; promotes respect for the law; provides just punishment for the offense; and affords adequate deterrence to criminal conduct.

Id. at 159 n.11.

Finally, the court concluded its memorandum with the following commentary:

> Vacating state court convictions for strategic purposes, particularly to avoid federal sentencing consequences, has lately become commonplace, if not routine. Under the hydraulic pressures of lengthy prospective sentences in the federal system, the impulse by defendants to vacate prior convictions is entirely understandable. Yet the process is nonetheless deeply troubling. A felony conviction is, and ought to be, a profoundly significant event. Its importance goes well beyond its immediate consequences, such as punishment; sentencing decisions in every jurisdiction in the United States are driven

-8-

> in great measure by the criminal history of the defendant. Felony convictions should neither be imposed nor overturned lightly, and under no circumstances should they be treated like a Las Vegas marriage, to be annulled when they become burdensome or inconvenient. Vacating long-standing convictions for strategic purposes also serves to erode public confidence in the criminal justice system. If the process is perceived to be readily manipulable, or even dishonest, the damage to that confidence is likely to be substantial indeed.

Id. (citation omitted).

## II.

Marsh makes two sentencing arguments on appeal. We quickly dispose of one. Marsh contends that it was necessary to prove to a jury beyond a reasonable doubt the predicate drug conviction that increased his mandatory minimum sentence under 21 U.S.C. § 841(b)(1)(B). We continue, however, to be bound by Almendarez-Torres v. United States, 523 U.S. 224 (1998), in which the Court found that such proof was unnecessary to support a sentence enhancement, id. at 226-27, and we have applied the same reasoning to mandatory minimum sentences. United States v. Coplin, 463 F.3d 96, 104-05 (1st Cir. 2006).

We next examine Marsh's ultimate sentence. We review the sentence imposed by the district court for reasonableness. This involves an examination of both the procedural aspects of sentencing and the substance of the sentence. United States v. Politano, 522 F.3d 69, 72 (1st Cir. 2008) (citing Gall v. United

-9-

States, \_\_\_ U.S. \_\_\_, \_\_\_, 128 S. Ct. 586, 597 (2007)). Our first task is to determine whether the district court made any procedural errors "'such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence -- including an explanation for any deviation from the Guidelines range.'" Id. (alteration in original) (quoting Gall, 128 S. Ct. at 597) .

If the district court has committed no such procedural error, we then review the "substantive reasonableness of the sentence imposed and review the sentence for abuse of discretion." Id. (citing United States v. Martin, 520 F.3d 87, 92-93). Consonant with Gall, we afford the district court wide discretion in sentencing. "[A]fter the court has calculated the GSR, 'sentencing becomes a judgment call, and a variant sentence may be constructed based on a complex of factors whose interplay and precise weight cannot even be precisely described.'" Id. at 73 (quoting Martin, 520 F.3d at 92). Ultimately, "'[T]he lynchpin of a reasonable sentence is a plausible sentencing rationale and a defensible overall result.'" Id. (quoting Martin, 520 F.3d at 96).

Here, Marsh challenges only the twelve-month upward departure from his mandatory minimum sentence. He argues that the court incorrectly applied U.S.S.G. § 5K2.0. At bottom, Marsh

-10-

disputes the district court's conclusion that the combination of his vacated state court convictions and the limitation placed on § 4A1.3 by the mandatory minimum "constitutes an aggravating circumstance not taken into account by the Guidelines." Marsh argues that, as the district court acknowledged, § 5K2.0 departures ordinarily address unusual aspects of the offense of conviction, rather than under-representation of past criminal conduct, which was the overriding consideration in this case. Marsh, 486 F. Supp. 2d at 157 (citing Hardy, 99 F.3d at 1248).

This Guideline issue is not one we need to resolve. As previously noted, the district court stated that it would have imposed the same sentence as a non-Guideline sentence under 18 U.S.C. § 3553(a). Marsh, 486 F. Supp. 2d at 159 n.11. If we find an alleged Guideline error would not have affected the district court's sentence, we may affirm. See United States v. Teague, 469 F.3d 205, 209-10 (1st Cir. 2006) (citing Williams v. United States, 503 U.S. 193, 203 (1992)). That is precisely the situation with which we are presented -- the district court stated that it would have reached the same result in a non-Guideline setting.

While the district court's explicit acknowledgment of § 3553(a) was brief, we do not require the court to "address those factors, one by one, in some sort of rote incantation when explicating its sentencing decision." United States v. Dixon, 449 F.3d 194, 205 (1st Cir. 2006). Moreover, our review of the

-11-

district court's sentencing decision convinces us that the various factors listed in the court's footnoted reference to section 3553(a) were suitably addressed at other points in the decision. For example, the lengthy discussion of Marsh's past criminal conduct clearly supports the court's conclusion that the sentence "protects the public from further crimes by defendant." Marsh, 486 F. Supp. 2d at 159 n.11; see 18 U.S.C. § 3553(a)(2)(C).

The dissent contends that the district court, by considering the conduct underlying Marsh's vacated resisting arrest convictions, ran afoul of both Shepard v. United States, 544 U.S. 12 (2005) and Cunningham v. California, 549 U.S. 270 (2004). We reject that contention, as neither case applies to these circumstances. Cunningham held that California's sentencing regime violated defendants' Sixth and Fourteenth Amendment right to a jury trial by allowing a judge to find facts that could lead to a sentence in excess of a statutory minimum. 549 U.S. at 274. Marsh was facing a statutory maximum life sentence, 21 U.S.C. § 841(b)(1)(B), and thus Cunningham is not implicated.

In Shepard, the Court limited the range of information upon which a sentencing judge may rely in determining whether a defendant's prior convictions were "violent felonies" within the meaning of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). 544 U.S. at 16. We have never extended Shepard's holding beyond the realm of the ACCA or the Career Offender Guideline,

U.S.S.G. § 4B1.2, and that case is not implicated here, either. Indeed, in Hardy we explicitly approved a district court's consideration of charged conduct underlying vacated convictions in connection with U.S.S.G. § 4A1.3, as the district court did here. And where, as here, the defendant did not contest the reliability of the information, the district court was free to credit the descriptions contained in the PSR. Hardy, 99 F.3d at 1251.

The district court also noted that the sentence would provide treatment for Marsh's mental health, an issue brought to the fore by Marsh and which played a significant role in the sentencing process, 18 U.S.C. § 3553(a)(2)(D). Finally, the court explicitly stated that the nearly twenty-year total term of imprisonment and supervised release was "not greater than necessary to achieve the purposes of sentencing." Marsh, 486 F. Supp. 2d at 159; 18 U.S.C. § 3553(a).

We have previously stated the unremarkable proposition that "[s]ections 3553(a)(1) and 3553(a)(2)(c) invite the district court to consider, broadly, the nature and circumstances of the offense and the history and characteristics of the defendant and the need for the sentence imposed to protect the public from further crimes of the defendant." Politano, 522 F.3d at 74 (internal quotations omitted). In our view, the district court did what the law calls for, it employed a "plausible sentencing

rationale" and achieved a "defensible overall result."  <u>Martin</u>, 520

F.3d at 96.

The sentence imposed by the district court is **<u>affirmed</u>**.


**-Dissenting Opinion Follows-**

**MERRITT, Circuit Judge, dissenting.** The sentence in this case is about 4 years above the Guidelines sentence and 1 year above the mandatory, minimum, 10-year sentence. I find the upward departure unreasonable. The district court seemed strongly influenced by and imposed the departure after objecting to the state court's action in setting aside the two previous minor state convictions — likening the process to "a Las Vegas marriage to be annulled when they become burdensome." The district court then improperly found facts based on the state police investigative reports leading to the state convictions. This reliance appears to be directly in violation of both Shepard v. United States, 544 U.S. 13, 22 (2005) (which imposed a "bar on review of documents like police reports and complaint applications [which] would often make ACCA sentencing enhancement hinge on . . . the vagaries of state prosecutors' charging practices"), and Cunningham v. California, 549 U.S. 270, 274 (2007) (barring judicial fact finding outside the jury verdict or guilty plea). I would, therefore, set aside the upward departure.