# United States Court of Appeals
## For the First Circuit

No. 18-1452

UNITED STATES,

Appellee,

v.

ERNESTO ORTIZ-ÁLVAREZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Torruella, Lynch, and Thompson,
Circuit Judges.

Mariángela Tirado-Vales on brief for appellant.
Rosa Emilia Rodríguez-Vélez, United States Attorney, Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate Division, and Julia M. Meconiates, Assistant United States Attorney, on brief for appellee.

April 19, 2019

**LYNCH**, **Circuit Judge**.  Ernesto Ortiz-Álvarez pled guilty, under a plea agreement, to illegal possession of a machine gun and to being a felon in possession of three firearms and ammunition in violation of 18 U.S.C. § 922(o) and (g).  The district court sentenced Ortiz-Álvarez to sixty months' imprisonment.

Ortiz-Álvarez argues on appeal that it was error for the district court not to decide, before imposing its sentence, whether the guidelines sentencing range (GSR) proposed in the presentence report (PSR) or the guidelines calculation agreed to in the plea agreement was correct.  Instead, after reviewing the various calculations, the district court based its sentence on the other sentencing factors listed at 18 U.S.C. § 3553(a).  On plain error review, we see no error.  And, in any event, we find no prejudice in light of the district court's statements that the sentence would have been the same under any of the proposed GSRs.  We affirm.

I.

Puerto Rico Police Department officers conducting surveillance at a location in Las Gardenias Public Housing Project known for drug sales noticed a man carrying a large plastic bag containing a green leafy substance.  Believing that the substance was marijuana, the officers pursued the man, who ran from them and into an apartment.

The police found the man in the apartment's living room with the plastic bag, which the officers later confirmed did hold marijuana, as well as heroin. As the officers were arresting the man, the defendant, Ortiz-Álvarez, opened the door of one of the apartment's bedrooms and emerged into the living room. Through the open bedroom door, the officers saw what appeared to be two firearms on top of the bedroom's dresser. They asked Ortiz-Álvarez if he had a weapons permit, and after Ortiz-Álvarez answered no, the officers entered the bedroom.

There, the officers recovered the two firearms seen on the dresser: a loaded Glock .40 caliber pistol, Model 23, and a loaded Glock .40 caliber pistol, Model 22. Both Glocks had been modified to fire automatically as machine guns. The police also noticed an AK-47 assault rifle leaning against the wall next to the dresser. A fanny pack found nearby contained ammunition, three radio scanners, and ledgers documenting drug transactions.

The officers arrested Ortiz-Álvarez, and a federal grand jury charged him with possession of a machine gun and being a felon in possession of firearms and ammunition in violation of 18 U.S.C. § 922(o) and (g). At the time, Ortiz-Álvarez was on state probation. In 2009, Ortiz-Álvarez had been sentenced to multiple years' probation for convictions for use of intimidation or violence against public authority, weapon possession, and felony attempted robbery.

Ortiz-Álvarez pled guilty to the § 922(o) and (g) charges under a plea agreement. The plea agreement stipulated that Ortiz-Álvarez's prior state felony conviction for attempted robbery was a crime of violence under the sentencing guidelines, see U.S.S.G. §§ 2K2.1(a)(3); 4B1.2(a), and thus stated an elevated base offense level (BOL) of 22. Both the plea agreement and the PSR added to the BOL a two-level enhancement because the offense involved three firearms, see id. § 2K2.1(b)(1), and then reduced the BOL by three levels for timely acceptance of responsibility. Pursuant to these calculations, the plea agreement stated an ultimate total offense level (TOL) of 21.

The plea agreement did not determine a criminal history category (CHC). Instead, the "parties . . . jointly recommend[ed] an imprisonment sentence of 46 months," stating further that "this recommendation is reasonable under the 18 U.S.C. § 3553(a) sentencing factors, regardless of the Guidelines' total offense level and criminal history category determined by the court at sentencing." That said, the TOL stipulated in the plea agreement corresponded to a GSR of thirty-seven to forty-six months if Ortiz-Álvarez's CHC were I and to a GSR of forty-one to fifty-one months if the CHC were II.

The PSR's GSR of thirty-three to forty-one months differed from the GSRs corresponding to the plea agreement's stipulations. Its stipulation that Ortiz-Álvarez's prior felony

- 4 -

conviction was a crime of violence had led to the plea agreement's TOL of 21, but the PSR did not consider this prior conviction to be a crime of violence, and so it calculated a BOL of 20 and a TOL of 19. The PSR also found a CHC of II based on the prior offenses and the fact that Ortiz-Álvarez was on probation for them when he committed this offense.

Ortiz-Álvarez's sentencing memorandum stated no objections to the PSR, did not question the plea agreement's conclusion that the prior conviction was a crime of violence, and requested the forty-six month sentence recommended in the plea agreement.

At the sentencing hearing, the district court asked defense counsel whether there was "an objection as to whether the previous robbery was a crime of violence," and counsel answered, "No." The district court then discussed with the prosecutor the PSR's and the plea agreement's differing determinations about the prior conviction. The prosecutor explained that the government disagreed with the PSR's conclusion on the crime of violence issue and added, based on the text of the plea agreement quoted above, that "regardless of whether this Court agrees with the probation officer's calculation under the guidelines or whether you accept the stipulated calculation of the guidelines in the plea agreement, the sentencing recommendation from the Government, and I understand from sister counsel, would be the same in this case."

Ortiz-Álvarez's counsel immediately confirmed that the defendant stood by the plea agreement. "We are not objecting to the PSR," defense counsel stated, "[h]owever, we are recommending to this . . . Court to accept the parties' recommendation of 46 months . . ., as . . . our recommendation . . . contemplates the applicable sentencing factors of [§ 3553(a)]."

After reviewing the TOLs in the plea agreement and the PSR and the CHC in the PSR, the district court stated "[b]ased on the information that the Court has before it, the Court is not going to determine which . . . of the guideline calculations is correct." Later, the district court added that it did not "have enough information" from the PSR and the other sources "to make a decision as to whether" the prior conviction was a crime of violence.

In explaining the sentence of sixty months, the district court first considered the nature of the offense, including that one of the weapons "was a military AK-47 assault rifle." "[A] modern machine gun can fire more than one thousand rounds per minute and allows the shooter to kill dozens of people in seconds," the district court emphasized. "Short of bombs, missiles and biochemical agents, there are few weapons more dangerous than a machine gun, and Mr. Ortiz had" more than one of them, the district court added. The district court next stated it had "considered the other sentencing factors set forth in [18 U.S.C. § 3553(a)]."

It found that neither the GSR in the PSR nor the parties' "proposed sentence . . . reflect[ed] the seriousness of the offense," nor adequately "promote[d] respect for the law," "protect[ed] the public from further crimes" by the defendant, nor "address[ed] the issues of deterrence and punishment." The district court then sentenced Ortiz-Álvarez to sixty months' imprisonment and three years' supervised release.

Ortiz-Álvarez's counsel asked the district court which GSR it had followed, and the district court reiterated that it had "considered both, but . . . didn't particularly follow any one of them." The district court stated that it would have imposed the same sentence "[r]egardless of the guideline" calculations applicable. When the prosecutor asked whether the district court would have done so "based on its analysis of the 3553(a) factors," the district court said, "[t]hat is correct."

## II.

Ortiz-Álvarez argues on appeal that the district court committed a procedural error when it chose not to definitively determine whether the GSR proposed in the PSR or the guidelines calculation agreed to by the parties in the plea agreement was correct. He also says that his sentence is substantively unreasonable. We address these arguments in turn.

Because Ortiz-Álvarez did not object to his sentence in the district court, our review is for plain error.[1] United States v. Soto-Soto, 855 F.3d 445, 448 (1st Cir. 2017); see also Fed. R. Crim. Pro. 52(b). Ortiz-Álvarez must show that (1) there was "an error that has not been intentionally relinquished or abandoned," (2) the error is "plain -- that is to say, clear or obvious," (3) the error "affected the defendant's substantial rights," and (4) the error "seriously affects the fairness, integrity or public reputation of judicial proceedings." Molina-Martinez v. United States, 136 S. Ct. 1338, 1343 (2016) (internal quotation marks omitted).

Ortiz-Álvarez's procedural argument fails at plain error review's first step for a number of reasons. For one, Ortiz-Álvarez has always agreed with the government that his prior conviction was a crime of violence; he has raised no objections to the stipulation in the plea agreement or to the plea's attendant recommendation, either at the sentencing stage or on appeal. Cf. United States v. Olano, 507 U.S. 725, 733 (1993) (explaining the first prong of plain error review). For another, the district court acknowledged that the PSR's calculations differed from those

---

[1] The standard of review applicable to unpreserved claims of substantive error is "somewhat blurred," but Ortiz-Álvarez's substantive challenge fails under either a plain error or an abuse of discretion standard. United States v. Castrillon-Sanchez, 861 F.3d 26, 30 (1st Cir.) (quoting United States v. Ruiz-Huertas, 792 F.3d 223, 226 (1st. Cir. 2015)).

agreed to by the parties, reviewed all of the calculations presented, and ultimately saw no need to decide an immaterial dispute about the GSR, concluding that a sixty-month sentence was appropriate based on other considerations. The district court thus did just what the federal sentencing regime set forth at § 3553(a) requires: "consider Guidelines ranges, see 18 U.S.C. § 3553(a)(4), but . . . tailor the sentence in light of other statutory concerns . . . , see § 3553(a)." United States v. Booker, 543 U.S. 220, 245 (2005). Given those features of the sentencing, there was no "error that has not been intentionally relinquished or abandoned." Molina-Martinez, 136 S. Ct. at 1343.

Ortiz-Álvarez cites Gall v. United States, 552 U.S. 38 (2007), but that case does not advance his argument. Dicta in Gall likened "failing to calculate . . . the Guidelines range" to the "significant procedural error" of "improperly calculating[] the Guidelines range." Gall, 552 U.S. at 51. But, Gall's "failing to calculate" language is not a reference to what the district court did here but rather is a reference to failing to "begin the[] [sentencing] analysis with the Guidelines and [to] remain cognizant of them throughout the sentencing process," as § 3553(a) requires. Id. at 50 n.6. And, as we have said, in sentencing Ortiz-Álvarez, the district court operated within § 3553(a)'s framework when it discussed the two possible TOLs and attendant guidelines ranges but ultimately determined that the

- 9 -

other § 3553(a) factors compelled a sentence of sixty months, regardless of the applicable GSR.  See id. at 49-50 (explaining that a sentencing judge must discuss the guidelines and then determine whether the § 3553(a) factors "support the sentence requested by a party").

Ortiz-Álvarez is also not helped by cases finding plain, procedural error in situations where a district court has made an improper guidelines calculation.  In those cases, defendants attempted to show, and ultimately did show, that the district court had "mistakenly deemed applicable an incorrect, higher Guidelines range."  Molina-Martinez, 136 S. Ct. at 1346; Rosales-Mireles v. United States, 138 S. Ct. 1897, 1905-06 (2018);[2] United States v. Taylor, 848 F.3d 476, 498-99 (1st Cir. 2017); United States v. Hudson, 823 F.3d 11, 19 (1st Cir. 2016).  In contrast, here, not only did the district court never conclusively adopt the plea agreement's higher TOL, but also Ortiz-Álvarez has never argued that the plea agreement's higher TOL was erroneous.

Ortiz-Álvarez's embrace of the plea agreement, with its stipulation that his prior state conviction was a crime of violence, also distinguishes this case from United States v. Tavares, 705 F.3d 4 (1st Cir. 2013).  And, in any event, our result

---

[2]    Both the government's and the defendant's briefing fail to call our attention to these and other pertinent Supreme Court cases.

here is consistent with Tavares.  There, the sentencing court had not "calculate[d] definitively the operative guidelines sentencing range," and we held this was error, albeit harmless error, and affirmed the sentence.  Id. at 25.  As Tavares made clear, in failing to calculate Tavares' GSR, the district court had left unresolved a significant disagreement between Tavares and the government about the defendant's criminal history category.  Id. That specific procedural "lapse" did not arise or occur here.  Id.

Here, there was no disagreement between the parties for the district court to resolve.  It was the probation office, in the PSR, not the defendant or the government, that offered an alternative, lower TOL calculation; and neither Ortiz-Álvarez's sentencing memorandum nor his counsel's statements at the sentencing hearing nor his brief on appeal defend the PSR's calculation or take issue with the plea agreement's stipulation that the prior conviction for Puerto Rico attempted robbery was a crime of violence.  (This absence of disagreement between the parties, we note, surely contributed to the district court's statement that it lacked sufficient information to draw a conclusion on the crime of violence question.)  No procedural sentencing rule required the district court to issue what would have been, in essence, an advisory opinion deciding whether Puerto Rico attempted robbery is a crime of violence.  Cf. United States v. Hammes, 3 F.3d 1081, 1083 (7th Cir. 1993) (citing United States

- 11 -

v. Fruehauf, 365 U.S. 146, 157 (1961)) (declining to resolve a legal question under the guidelines where defendant agreed to sentencing procedure).

Ortiz-Álvarez's argument that the district court's choice not to conclusively adopt a GSR fails at plain error review's first step. It also fails for another, independent reason, at plain error review's third prong: the district court's choice did not affect Ortiz-Álvarez's substantial rights. An error affects substantial rights only if there is a "'reasonable probability that, but for the error,' the outcome of the proceeding would have been different." Molina-Martinez, 136 S. Ct. at 1343 (quoting United States v. Dominguez Benitez, 542 U.S. 74, 76 (2004)). And Ortiz-Álvarez's sentence would not have been different had the district court settled on a GSR.

The district court stated that it would have imposed the same sentence "based on its analysis of the § 3553(a) factors," regardless of the applicable GSR. On the record here, that statement demonstrates "that the district court thought that the sentence it chose was appropriate irrespective of the [applicable] Guidelines range" and that adoption of a particular GSR would not have changed Ortiz-Álvarez's sentence. Molina-Martinez, 136 S. Ct. at 1346; see also Taylor, 848 F.3d at 498 (explaining that a claim of prejudice is defeated by "a clear statement by the [sentencing] court" that "diminish[es] the potential of the

[Guideline Sentencing Range] to influence the sentence actually imposed") (first and third alterations in original) (quoting Hudson, 823 F.3d at 19). There was thus no prejudice. See Molina-Martinez, 136 S. Ct. at 1346-47; see also Tavares, 705 F.3d at 25; United States v. Marsh, 561 F.3d 81, 86 (1st Cir. 2009) (affirming sentence based on similar statements by the sentencing court).

The district court's explanation of the reasons for the sixty-month sentence further counters Ortiz-Álvarez's claim of prejudice by "mak[ing] it clear that the judge based the sentence he . . . selected on factors independent of the Guidelines" range. Molina-Martinez, 136 S. Ct. at 1347; see also id. at 1346; Taylor, 848 F.3d at 498 (recognizing that a claim of prejudice can be defeated by a district court's statements "that its sentence would nevertheless be the same under an alternative analysis"). The district court did discuss the guidelines calculations in the plea agreement and the PSR, but it ultimately, and unmistakably, justified the sentence imposed based on the nature of the offense and the "other sentencing factors" at § 3553(a), not on those guidelines calculations. See United States v. Henderson, 911 F.3d 32, 36 (1st Cir. 2018) (affirming sentence where sentencing rationale was independent of possibly erroneous GSR). That independent justification shows that the district court, while cognizant of the dueling guidelines calculations, "intended to untether" its sentence from the guidelines calculations presented

to him (and any errors in them), refuting Ortiz-Álvarez's claim of prejudice.[3]  Hudson, 823 F.3d at 19.

The district court's rationale was also plausible, and it led to a defensible sentence, and so the sentence is not substantively flawed, as Ortiz-Álvarez argues.  See, e.g., United States v. Contreras-Delgado, 913 F.3d 232, 243 (1st Cir. 2019) ("The hallmarks of a substantively reasonable sentence are a plausible sentencing rationale and a defensible result." (internal quotation marks omitted)).  Given that Ortiz-Álvarez was a convicted felon on probation who possessed two pistols modified to fire automatically and an AK-47 near drugs, the five-year sentence he received fell within the "universe of reasonable sentences." United States v. Rivera-González, 776 F.3d 45, 52 (1st Cir. 2015).

Affirmed.

---

[3]     The district court's statements and its justification of the sentence on factors other than the guidelines calculations distinguish this case from those finding prejudice in situations where the district court adopted an erroneous guidelines calculation.  See generally Molina-Martinez, 136 S. Ct. at 1345-46, 1347-48; see also Hudson, 823 F.3d at 19 (prejudice where the sentencing court stated "I see no basis to vary from the [GSR]," where that GSR was flawed); Taylor, 848 F.3d at 498-99 (prejudice where the sentencing judge calculated sentence from an erroneous criminal history score).