# United States Court of Appeals
## For the First Circuit

No. 23-1259

UNITED STATES OF AMERICA,

Appellee,

v.

NASHALIE SAMARY RODRÍGUEZ-BERMÚDEZ,

Defendant-Appellant.


APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]


Before

Gelpí, Thompson, and Aframe,
Circuit Judges.


Ivan Santos-Castaldo, Research and Writing Attorney, with whom Rachel Brill, Federal Public Defender, Franco L. Pérez-Redondo, Assistant Federal Public Defender, Supervisor, Appeals Section, and Alejandra Bird-López, Assistant Federal Public Defender, were on brief, for appellant.

Maarja T. Luhtaru, Assistant United States Attorney, with whom W. Stephen Muldrow, United States Attorney, and Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate Division, were on brief, for appellee.

July 25, 2025

THOMPSON, <u>Circuit Judge</u>. On December 15, 2021, Nashalie Rodríguez-Bermúdez ("Rodríguez") was charged in a two-count indictment with possession with intent to distribute five kilograms or more of cocaine, 21 U.S.C. § 841(a)(1), and conspiracy to possess with intent to distribute five kilograms or more of the same, 21 U.S.C. § 846. Rodríguez entered a straight plea on July 7, 2022, and she was sentenced by the federal District Court for the District of Puerto Rico around eight months later on March 3, 2023. She now comes before this court seeking relief from the 46-month sentence of incarceration (with five years' supervised release) imposed.[1] She arrives here with a bindle of arguments to unknot and set afore us, principal among them being her contention that the district court prejudicially erred in pronouncing its sentence by expressly declining to determine the applicable Guidelines range and by failing to explain the non-Guidelines sentence thereupon imposed. For reasons to be told, we agree with Rodríguez that the district court so erred, and we therefore vacate the sentence and remand the case for sentencing afresh.

---

[1] After the sentence was imposed by the district court, Rodríguez voluntarily surrendered and began serving time at a federal facility in Texas -- until this court granted her motion for bail pending appeal on February 22, 2024. In consequence, Rodríguez is presently on bail.

**A**

We begin with a sketch of the offender and the offenses, rendering the lineation as obliged by Rodríguez's claims on appeal. In so doing, we draw the facts primarily from the presentence investigation report, the sentencing memorandum, and the sentencing hearing transcript -- and we array them largely in equipoise. See United States v. Felton, 417 F.3d 97, 99 (1st Cir. 2005).

First, our appellant, Rodríguez. From early on in life, she faced difficulties, no doubt. She was one of seven children raised primarily by her mother in the Las Margaritas and the Jardines de la Nueva Puerta de San Juan housing projects. When she was about thirteen, she had her first interaction with a Puerto Rico court. In that seminal first instance, her mother invited the intervention of a Commonwealth juvenile court to "correct her misbehavior" after an altercation between the two concerning a sleepover at a friend's house. Her mother expected maybe "a scolding from the [juvenile court] judge," howbeit, the judge went much further and removed Rodríguez from her mother's custody altogether and into her grandmother's care -- where she experienced neglect and mistreatment. What's worse is that, when Rodríguez decamped to see her mother, in contravention of the juvenile court judge's order, her grandmother contacted her social worker, and Rodríguez was removed from her grandmother's custody

- 4 -

into a juvenile facility. After three weeks in that facility, Rodríguez was released into the Department of Family Affairs' custody, where she lived in foster care for a year more still. During this tumultuous period in her life, she experienced depression with psychosis, and she was prescribed Zyprexa and Depakote as treatment.

After her stint in foster care, Rodríguez was able to live with her mother and siblings again. At the age of fifteen, back living with her family, she became pregnant and had her first child, a baby girl, on November 17, 2012. She left school soon thereafter,[2] and to take care of herself and her daughter, she eventually found employment as a bartender. That job led to another job three years later as an exotic dancer, which was lucrative, but violent and unfulfilling. Rodríguez quit the position after a few years and took up work with a maintenance company "sweeping and mopping floors" instead. But after two months in her new role, where she was barely making ends meet, Rodríguez was terminated. In that anxious moment is when she decided to contact an old acquaintance who had approached her in the past in efforts to "recruit[] [her] to carry luggage to different destinations." According to the acquaintance, the luggage contained cash. And Rodríguez was offered $6,000 for her

---

[2] Rodríguez later returned to school and obtained her high school diploma in 2017.

courier services should she accept. This is how the crimes of conviction came to be.

On Rodríguez's request, her acquaintance put her in contact with an anonymous man via a messaging application who informed her that she needed to acquire a VISA debit card associated with her existing bank account to move forward. Once Rodríguez had acquired the VISA, the man sent her money and instructed her to deposit it into the account. The man then used the VISA to purchase Rodríguez plane tickets from Aguadilla, Puerto Rico, to Hartford, Connecticut, "and everything was settled" on the itinerary. Soon afterward, around midnight on December 13, 2021, a woman in a taxicab arrived outside of Rodríguez's home in a San Juan housing project to take her to Aguadilla. Once in Aguadilla, the taxicab driver made a brief stop in a neighborhood near the airport, where the driver met an unidentified person who placed the luggage containing what turned out to be illegal contraband in the trunk of the car. The driver then proceeded to the airport and dropped Rodríguez and the luggage off around 4:00 a.m.

Rodríguez did not make it very far on her mission. As she entered the Aguadilla airport, a Task Force Officer ("TFO") immediately noticed that she was carrying two large suitcases, one black, one purple, with locks on both -- which he deemed suspicious. The TFO maintained surveillance and, at baggage

drop-off, conducted a consensual encounter with Rodríguez. During that encounter, the TFO asked Rodríguez if she was the owner of the purple and black bags, and she acknowledged being so, but she explained straightaway that she did not have the keys to the locks. Rodríguez was then escorted to the Drug Enforcement Agency's airport office with her baggage, where she gave agents written and verbal consent to search the suitcases. The locked luggage was opened one way or another, and 14.66 kilograms of cocaine was discovered therein. Rodríguez was thus taken into custody.

Rodríguez, who is a first-time offender, accepted responsibility for the contents of the luggage and the related crimes and pled guilty accordingly.[3] (Rodríguez explained to the government during a safety valve interview that she believed the suitcases contained money, and she said if she had known she was transporting drugs in the luggage, she would not have accepted the criminal assignment.) Hence, Rodríguez was sentenced by the District Court for the District of Puerto Rico on March 3, 2023. The issues on appeal all relate to how the district court judge doled out sentence.

---

[3] Three days after her initial appearance before a magistrate judge on the day of her arrest, Rodríguez was "released on a $10,000 unsecured bond with electronic monitoring, home detention, work/study, mental health evaluation, drug testing and curfew between 10:00 pm and 6:00 am." Several months later, on July 7, 2022, Rodríguez entered a straight plea conceding her guilt -- yet she remained on bail with conditions until her sentencing.

Prior to the sentencing hearing, as is the usual course, the probation office submitted a presentence investigation report ("PSR") outlining Rodríguez's conduct relative to the crimes of conviction, exploring her criminal history, and apprising the court of her "characteristics."[4]  The PSR also contained an offense level computation under the United States Sentencing Guidelines ("the Guidelines"), which figured, among other things, that Rodríguez was entitled to a four-point downward adjustment because she "was a minimal participant in [the] criminal activity."[5]  And the PSR correspondingly identified a Guidelines range of 46 to 57 months (with five years' supervised release) considering Rodríguez's total calculated offense level of 23 and her criminal history category of I, being a first-time offender.

Next, the defense submitted its sentencing memorandum, which depicted Rodríguez's background and the events leading up to

---

[4] Such "offender characteristics" included, inter alia: Rodríguez's family and community ties and responsibilities, her mental and emotional health, her physical condition, her employment record, and her educational and vocational skills.  Our earlier rehearsal of Rodríguez's background reflects the characteristics highlighted by the PSR.

[5] The PSR reasoned so because "[b]ased on the totality of the circumstances, [Rodríguez] was substantially less culpable than the average participant and performed a limited function in the criminal activity.  [Ms.] Rodríguez lacked knowledge of the scope and structure of the enterprise, did not plan or organize, or exercise[] decision-making authority or benefit[] from the criminal activity."

the instant offenses -- a narrative which we earlier recited in pertinent part. The memorandum reported moreover that since Rodríguez was released on bail, she had embarked on a course of "study[] at Columbia Central University . . . to become a Professional Pet Groomer," while dedicating the remainder of her time to her daughter, in compliance with the court's conditions.[6] Like the PSR, the memorandum advocated that Rodríguez was entitled to a minimal participant adjustment. And the memorandum concluded with this coda:

> Being a first offender, with prosocial support from her family, a developing career, the responsibility of being a dedicated single mother, and the trauma she has gone through since her arrest, there is a very low likelihood that Ms. Rodríguez will re-offend. She no longer associates with any of the persons that got her into this mess and wants to find another home, away from the housing project where she can continue raising her daughter. . . . Considering the foregoing, Ms. Rodríguez respectfully requests that the Court sentence her to time served, followed by five years of supervised release.

The government filed a sentencing memorandum and objection to the PSR in course. In its memorandum, the government vociferously argued against applying the four-point minimal

---

[6] The defense acknowledged that Rodríguez, facing a sentence of incarceration, had relapsed into depression on "[t]he thought of failing her daughter and being separated from her," and that she had attempted suicide using a concoction including benzodiazepines and fentanyl as a result, which caused her sole violation of the conditions of release when she failed a drug test thereafter.

participant adjustment advanced by both probation and the defense,[7] and it advocated accordingly for a Guidelines range of 57 to 71 months based on a total calculated offense level of 25.[8] The government recommended a sentence of 57 months, which represented the low point of its identified Guidelines range.[9] Rodríguez in response filed an opposition and objection expanding on her argument for the application of the minimal participant adjustment and calculating a Guidelines range of 37 to 46 months based on a total offense level of 21: which encompassed the four-point minimal participant adjustment plus the two-point safety-valve reduction contemplated by the government in its memorandum.[10] Considering

---

[7] For the purposes of this appeal, it is not necessary to outline the government's minimal-participant argument in inch-perfect detail; it suffices to say that the government resisted the adjustment's application on the ground that Rodríguez supposedly failed to show that she was "less culpable than her recruiter, the taxi driver, or any other person [in the drug trafficking organization]."

[8] As the watchful reader may recall, the PSR's total calculated offense level was 23 including the four-point minimal participant adjustment, whereas the government's calculation less the four-point adjustment landed at 25 rather than 27. That is so because the government's calculation included a two-point adjustment under U.S.S.G. § 5C1.2 based on Rodríguez's satisfaction of the "safety valve" requirements under 18 U.S.C. § 3553(f), which is a downward adjustment the PSR did not include.

[9] The government also told the court, "in the alternative, should the Court wish to consider Defendant's compliance while on pretrial release and vocational training as mitigation, a sentence of 48 months is reasonable."

[10] Probation also submitted an addendum to the PSR, which restated its position that the minimal participant adjustment was

her identified Guidelines range and the arguably mitigating factors she discerned, e.g., her "developing career" and "responsibility of being a dedicated single mother," Rodríguez reiterated her recommendation that a time-served sentence would suffice to serve the purposes of sentencing. Sticking to its guns, the government replied that application of the minimal participant adjustment would be inappropriate and asserted that a sentence of time-served would be inadequate. See supra note 7. With all of this information scribbled in the backdrop for the district court to consider in advance, the sentencing hearing thus commenced.

At that hearing, counsel for Rodríguez and the government restated their arguments for their respectively discerned Guidelines ranges and their related recommended sentences. An extended discussion between adversary counsel and the court, focused on the applicability of the minimal participant adjustment, took place. Rodríguez made a statement to the court expressing her repentance. And on the heels of Rodríguez's libretto, the district court pronounced its sentence.

The district court began by delving into the appropriate offense level calculation and Guidelines range. After ascertaining a base offense level of 30, the court determined that Rodríguez was entitled to a two-point reduction for compliance

---

appropriate for the same reasons as originally provided in the PSR.

with the 18 U.S.C. § 3553(f) "safety valve" and a three-point reduction for acceptance of responsibility, which brought her total offense level less the minimal participant adjustment to 25, in line with both parties' argument. The court then correctly expressed that "if [Rodríguez] were a minimal participant, [her total offense level] would be 21. If not, her total offense level would be 25." All accurate on the sentencing abacus up to that point. Considering Rodríguez's criminal history category of I, the court then properly discerned a Guidelines range of 37 to 46 months (plus a supervised release term of two to five years) if Rodríguez were a minimal participant, and a range of 57 to 71 months in the contrary universe. In the balance between those two ranges, however, is where error crept in.

After remarking on the two potential Guidelines ranges without choosing which to apply, the district court declared that it "ha[d] considered the other sentencing factors set forth in [18 U.S.C. § 3553(a)], the presentence investigation report, the sentencing memoranda . . . the strong arguments received today . . . and Ms. Rodríguez's allocution." In light of the material available in those locations -- information and argument which we have mostly revealed in the lines scrawled hitherto -- the court proclaimed that it was "not going to make a decision as to whether or not [Rodríguez was] a minimal participant, because the sentence that [it was] going to impose would be the same whether

or not she [were] a minimal participant."  With little further explanation,[11] the court went on to say this:

> Today Ms. Rodríguez has requested a sentence of time served.  The Government has requested a sentence of 48 months, which is below the guideline range which the Government indicates is the appropriate guideline range.[12]  The 48 months the Government has indicated has -- is based on the mitigating factors that [defense counsel] has so strongly argued on Ms. Rodríguez's favor.  As I indicated, whether Ms. Rodríguez was a minor participant or not, the sentence that I'm going to impose would be the same.  We have to remember that the high end of the guideline range, if she were a minimal participant, is 46 months.  So that will be my sentence, 46 months.

Having ostensibly unmoored itself from the Guidelines with scant explanation, the district court muddied the waters further still when it declared next, just a few moments after announcing its non-Guidelines sentence, that "[it] ha[d] considered . . . the fact that [Rodríguez] may have been a minor participant" in its sentence-selection process, making a direct reference to the Guidelines inquiry which it had just pondered and supposedly set aside.  And the court contributed more confusion

---

[11] The district court explained in laconic fashion prior to announcing its sentence that some evidence in the record may have militated against applying the minimal participant adjustment, but the court's discussion at that point in time did not address the question why the sentence should be the same regardless of whether the minimal participant adjustment applied.

[12] The 48-month number represented the government's alternative sentencing recommendation, supra note 9.

- 13 -

yet by noting in conclusion that "Rodríguez is a first time offender, she has remained compliant during her pretrial release [and] is currently studying and gainfully employed in her own business" -- pointing to all mitigating factors which could not suffice to explain why a sentence at "the high end" of Rodríguez's proposed Guidelines range was appropriate whatever the applicable Guidelines range.[13]

Withal, Rodríguez was committed to the custody of the Bureau of Prisons for a term of 46-months' incarceration as to each count, to be served concurrently with each other, with five years of supervised release to follow.[14]  She now comes to us

---

[13] The government avers that the district court also pointed to "aggravating factors in concluding that the 46-month sentence was appropriate." However, the aggravating factors the government references were all considered by the district court relative to the minimal-participant inquiry under the Guidelines, see supra note 11; the factors were not referenced by the district court to explain the non-Guidelines sentence of incarceration.

[14] Prior to the conclusion of the sentencing hearing, Rodríguez's counsel timely objected to the district court's sentence "as being procedurally and substantively unreasonable" -- pointing primarily to the fact that "the [sentencing] [c]ourt did not make a determination as to whether [Rodríguez was] a minimal participant or not" before pronouncing its sentence, and, moreover, to the court's alleged (and now illustrated, as we will show) failure to allay concern that the non-Guidelines sentence thereafter imposed "would [not] be more severe than necessary . . . [considering] the purposes of 3553, [and] her factors that have been obviously vigorously proposed for the [c]ourt and litigated in this matter."  The government argues that Rodríguez failed to challenge the sentencing explanation, and it says any argument relative to the explanation's adequacy is therefore waived, but the record shows that Rodríguez's objection was sufficient, by our lights, to preserve the procedural reasonableness issue.  Rodríguez's remonstrance put the court on

- 14 -

saying, among other things, that the sentencing process was unreasonable.[15]   Stick close, reader, if you'd like to hear an explanation why we conclude Rodríguez is right about that.

## C

When this court reviews a district court's sentence, we first examine claims of procedural error, and we advance to "inquire into the substantive reasonableness of a sentence only after it has passed procedural muster."  Rivera-Berríos, 968 F.3d at 134.  A district court's failure to adequately explain its chosen sentence, which is the boiling of what Rodríguez claims occurred below, is a significant procedural error.  See United States v. Melendez-Hiraldo, 82 F.4th 48, 54-55 (1st Cir. 2023) (emphasizing that "[a] court commits 'significant procedural error' by 'failing to adequately explain the chosen sentence -- including an explanation for any deviation from the

---

notice that she was complaining about an insufficient explanation having been given as to why the selected 46-month sentence of incarceration was appropriate considering the apposite § 3553(a) factors and notwithstanding the applicable Guidelines range.  See United States v. Rivera-Berríos, 968 F.3d 130, 134 (1st Cir. 2020) (explaining that "a defendant's objection [to procedural sentencing error] need not be framed with exquisite precision" to preserve the claim for appellate review, and that, at bottom, the objection only need be "sufficiently specific to call the district court's attention to the asserted error" (quoting United States v. Soto-Soto, 855 F.3d 445, 448 n.1 (1st Cir. 2017))).

[15] Rodríguez raises a full suite of arguments challenging the sentence imposed.  However, because her procedural reasonableness claim is dispositive, we will focus our attention there.

Guidelines range'" (quoting United States v. Gall, 552 U.S. 38, 51 (2007)). We appraise such claims of procedural error under a multifaceted standard whereby "we apply clear error review to factual findings, de novo review to interpretations and applications of the guidelines, and abuse of discretion review to judgment calls." United States v. Nieves-Mercado, 847 F.3d 37, 42 (1st Cir. 2017). Because our decision in this case hinges for reasons to be told on the district court's procedural blunder in the explanatory arena, we will focus our alighting on the law narrowly to illuminate our holding that the court's deficient explanation requires remand for resentencing on this record.

Before we begin though, it is, for clarity's sake, worth clearing the brush of one of Rodríguez's procedural reasonableness arguments that misses the mark a tad. In addition to arguing that the district court failed to adequately explain why the 46-month sentence it selected was appropriate, Rodríguez argues that the court prejudicially erred by "failing to calculate" the applicable Guidelines range, citing Gall, wherein the Supreme Court likened (in dicta) "failing to calculate . . . the Guidelines range" to the "significant procedural error" of "improperly calculating[] the Guidelines range." 552 U.S. at 51. Rodríguez's failure-to-calculate argument falters before us however, because, as the government points out in response, this circuit has reasoned that when the Supreme Court uttered the words "failing to

- 16 -

calculate," it meant failure to "begin the sentencing analysis with the Guidelines and to remain cognizant of them throughout the sentencing process," rather than failure to definitively select the applicable Guidelines range after correctly performing the requisite calculations. See United States v. Ortiz-Álvarez, 921 F.3d 313, 317-18 (1st Cir. 2019) (citation modified). In the instant case, there can be no doubt that the district court began its analysis with a discernable recognition of the Guidelines, and that it properly conducted the apropos Guidelines mathematics as to both potential total offense levels it plumbed. In such cases, where a district court "discusse[s] the two possible [offense levels] and attendant guidelines ranges but ultimately determine[s] that" an alternative, non-Guidelines sentence is appropriate based on the § 3553(a) factors "regardless of the applicable [Guidelines range]," we have held that a district court does enough to avoid error for failing to calculate the Guidelines range. Id. at 318. So we hesitate to say on this record that the district court erred by failing to calculate the applicable Guidelines range.[16] The similar but distinct issue surrounding the

---

[16] With that being said, our caselaw has deepened the subtleties and intricacies on the sentencing calculation front and has explained that when a sentencing court leaves "unresolved a significant disagreement between [the parties]" about the Guidelines range, as occurred below relative to the minimal-participant inquiry, such lapse may be its own independent prejudicial error. Ortiz-Álvarez, 921 F.3d at 318.

Guidelines which ultimately drives our decision is instead that, as Rodríguez argues: once the court had concluded its Guidelines meditations, it failed to adequately explain why its selected non-Guidelines sentence was appropriate irrespective of the applicable Guidelines range in light of the other § 3553(a) factors.[17]  See Ortiz-Álvarez, 921 F.3d at 318 (explaining that

------

[17] There are several contexts in which cases have arisen where the issue on appeal is the adequacy of an explanation for an outside-of-the-Guidelines sentence.  Central among them are those cases where: (1) a sentencing court, after correctly deciding the Guidelines range, imposes a variant sentence, i.e., a sentence above or below the applicable Guidelines range, see, e.g., United States v. Muñoz-Fontánez, 61 F.4th 212 (1st Cir. 2023); (2) a sentencing court, after erroneously deciding the Guidelines range, imposes a sentence within that erroneous range, while stating that the sentence imposed is unaffected by the Guidelines, see, e.g., United States v. Taylor, 848 F.3d 476 (1st Cir. 2017); and (3) a sentencing court declines to definitively decide the Guidelines range and elects to impose an expressly non-Guidelines sentence from whole cloth, see, e.g., Ortiz-Álvarez, 921 F.3d 313.  While each genre of case presents its own distinct set of issues, the principle that an outside-of-the-Guidelines sentence calls for an enhanced explanation applies with force across all categories (contrary to the government's clashing position), including when the sentencing court opts to jettison any consideration of the Guidelines.  See Muñoz-Fontánez, 61 F.4th at 214; Taylor, 848 F.3d at 498; Ortiz-Álvarez, 921 F.3d at 319; see also Rita v. United States, 551 U.S. 338, 350 (2007) (explaining that "[t]he sentencing courts, applying the Guidelines in individual cases, may depart either pursuant to the Guidelines or . . . by imposing a non-Guidelines sentence" (emphasis added)).  That remains so even if a non-Guidelines sentence selected by a sentencing court happens to fall within the undisputedly appropriate Guidelines range, as the relevant procedural concern in such cases remains the sufficiency of the explanation for the sentence notwithstanding the Guidelines, cf. Ortiz-Álvarez, 921 F.3d at 318, and because the Sentencing Commission's choice to attach a certain Guidelines range to a given scenario at issue cannot be relied upon to support a court's explanation why its sentence is appropriate notwithstanding the applicable range, cf. Rita, 551 U.S. at 347-

although a sentencing court is not required to select the applicable Guidelines range with certainty when imposing a non-Guidelines sentence, the court must nevertheless illustrate "that the other § 3553(a) factors compel[]" the chosen sentence "regardless of the applicable [Guidelines range]"); see also United States v. Montero-Montero, 817 F.3d 35, 37–38 (1st Cir. 2016) (explaining that a shoddy sentencing explanation "cast[s] a shadow over the courts' reputation for fairness" and emphasizing that "the greater the deviation [from the Guidelines], the greater the burden of justifying the sentence imposed"); Taylor, 848 F.3d at 499 (exploring the prejudice which may result when a sentencing court fails to appropriately "untether" its selected sentence from the Guidelines in imposing a non-Guidelines term).

We will now recite the sentencing proceeding succinctly, this time with a focus on the problems we see with the district court's sentencing approach. First, the district court declined to definitively select the applicable Guidelines range, proclaiming that it would impose the same sentence whatever the appropriate Guidelines calculation. The court -- as we've

---

51 (explaining that the Guidelines are "intend[ed] to embody the[] ends [of sentencing]," and reasoning accordingly that the explanation for a within-Guidelines sentence may be thus reinforced in the usual case where the sentencing court imposes a sentence pursuant to the Guidelines "reflect[ing] both the Commission's and the sentencing court's judgment as to what is an appropriate sentence for a given offender" (emphases added)).

- 19 -

explained -- had the discretion to do so, as our circuit has elucidated that a sentencing court is not necessarily obliged to select the applicable Guidelines range with certainty when imposing a non-Guidelines sentence. See Ortiz-Álvarez, 921 F.3d at 318. Second, once theoretically "untether[ed]" from the Guidelines, see Taylor, 848 F.3d at 499, the district court announced its decision to impose a 46-month sentence -- which happened to land at the very high end of the defense's proposed Guidelines range, and just two months below the low end of the government's. In so doing however, the district court, rather than endeavoring to illustrate why "the other § 3553(a) factors compelled [the 46-month] sentence . . . regardless of the applicable [Guidelines range]," Ortiz-Álvarez, 921 F.3d at 318, instead elected to expressly rely on the dueling ranges advanced by Rodríguez and the government to divine its chosen sentence. The core justification for the sentence given by the district court was that "the high end of the guideline range, if [Rodríguez] were a minimal participant, is 46 months." The district court's express reliance on the high end of the defense's proposed Guidelines range to explain the expressly non-Guidelines sentence it was electing to impose leaves us without an explanation aside from the Guidelines as to why the selected sentence was sufficient, but not greater than necessary, to serve the purposes of sentencing. And it leads us to the conclusion that, when objectively viewed, the

sentence imposed was indeed driven by the Guidelines, at least in part[18] -- whatever the district court may have said elsewise.[19] That being so, and because the district court never definitively decided between the dueling Guidelines ranges, and considering one of the two ranges was necessarily wrong (i.e., either Rodríguez

---

[18] As Rodríguez pointed out in her brief, the sentence imposed appears on its face like a "Solomonic compromise" between the two proposed Guidelines ranges, with 46 months being as close as mathematically possible to the 48-month recommendation proposed by the government whilst remaining within the 37-to-46-month range proposed by Rodríguez.

[19] The government asserts that the district court provided a sufficient explanation why the sentence was appropriate notwithstanding the Guidelines considering the other § 3553(a) factors, because the court "discussed Rodríguez's mitigating factors but also explicitly referenced the aggravating factors," and because the court stated moreover that the 46-month sentence addressed "the seriousness of Ms. Rodríguez's offenses, promote[d] respect for the law, protect[ed] the public from additional crimes by Ms. Rodríguez, and addresse[d] the issues of deterrence and punishment." Whatever the effect of the statements by the sentencing court identified by the government may be, see supra note 13, the government does not explain how we are to interpret the sentencing court's explanation as divorced from the Guidelines and thus as sufficient to explain the sentence notwithstanding the Guidelines when the court plainly made reference to each side's preferred sentencing range and went on to indicate that it was imposing its selected 46-month sentence because such a sentence was at "the high end of the guideline range, if [Rodríguez] were a minimal participant." See United States v. Flores-Nater, 62 F.4th 652, 656–57 (1st Cir. 2023) (acknowledging that "a sentencing court's rationale need not always be explicit even when the court imposes a[] . . . variant sentence" and that "[t]here are some instances in which a court's rationale may be teased from the sentencing record," but reasoning where "[t]he court's . . . explanation" offers "no spoor for the cognoscenti . . . we cannot say what specific factors shaped the full extent of the court's . . . sentence" and holding "[i]n such circumstances, meaningful appellate review is frustrated").

was entitled to a minimal participant adjustment or she was not), we cannot be sure that the district court did not draw on an erroneous Guidelines range in selecting its sentence. Such a lack of clarity not only deprives us of our ability to review the basis for the 46-month term of incarceration, which is an independent basis for remand on this record, see Montero-Montero, 817 F.3d at 37, it also tees up a scenario where we have previously found that sentencing relief was merited considering an erroneous Guidelines calculation may have impacted the sentence imposed -- in spite of the sentencing court's contrary averments that its selection was unaffected by the Guidelines. See Taylor, 848 F.3d at 499.

Our analysis does not stop here just because we have identified a sentencing misstep; even if a district court has erred, we still must ask if any resulting prejudice befell the appellant before granting relief on the claimed error's account. Put another way, it is not atypical for a sentencing court to state that its sentence is unaffected by the Guidelines, and we have sometimes held in such cases that any errors in the court's Guidelines calculations were harmless and thus insufficient to merit relief. See, e.g., United States v. Marsh, 561 F.3d 81, 86 (1st Cir. 2009) (explaining that "if we find an alleged Guideline error would not have affected the district court's sentence, we may affirm" on the ground that the error was harmless). The government says that because the district court below explicitly

stated that the sentence it imposed would have been the same whatever the applicable Guidelines range, any concern we may have about the adequacy of the court's sentencing explanation is unwarranted, and any error in the Guidelines calculations is a non-issue, because no harm was done to Rodríguez. But the government's idea that no harm was done to Rodríguez is not borne out by the record presented. In those cases where we have found that an error was harmless because the sentencing court made clear it would have imposed the same sentence regardless of the applicable Guidelines range, we have typically identified in the record a clear statement by the sentencing court indicating that the chosen sentence was unaffected by the Guidelines, including, as we already illuminated above, an explanation as to why the particular sentence imposed was appropriate setting aside the Guidelines and considering the other § 3553(a) factors. See, e.g., id. What we have not looked for to shelter a non-Guidelines sentence from Guidelines scrutiny is a stinted statement that the same sentence would have been imposed whatever the applicable Guidelines range, which is what the district court here provided when pronouncing the appointed 46-month term. See United States v. Maldonado-Negroni, 141 F.4th 333, 335 (1st Cir. 2025) ("The district court's brief statement that it would have imposed the same term of imprisonment regardless of the violations' category . . . is inadequate to satisfy the government's burden to

show harmless error."). Such language cannot suffice to shield a truncated explanation for a non-Guidelines sentence from error, nor does it operate to establish that any error in the requisite Guidelines calculations did no harm. See id. at 344-45. In other words, when there are two competing Guidelines ranges before a sentencing court, as here, and where the court does not definitively decide between those ranges in selecting its sentence, as occurred below, without a clear statement from the sentencing court illustrating that the sentence imposed is verily unaffected by the Guidelines, including an explanation as to why the other § 3553(a) factors support the sentence, a court of review cannot appropriately apprehend the basis for the sentence, nor can it be sure that the sentence was unaffected by the erroneous Guidelines range.

So, with the sentencing record in such a condition, we must vacate and remand for resentencing in line with this opinion.[20]
So ordered.

---

[20] In addition to arguing that the district court failed to adequately explain the 46-month non-Guidelines sentence imposed, Rodríguez also argues that the district court erred in declining to resolve the minimal-participant inquiry in her favor. We decline to address Rodríguez's argument though, as her failure-to-explain argument is dispositive. However, we note that, should the sentencing court elect to conduct the minimal-participant inquiry on remand, it should look to our recent expression outlining the appropriate analysis in United States v. Guía-Sendeme, 134 F.4th 611 (1st Cir. 2025), for guidance.

Rodríguez moreover argues that certain amendments to the Guidelines, which were enacted after her sentencing hearing,

compel remand for a resentencing considering them.  We decline to comment on that argument too, as the sentencing court will have an opportunity to evaluate Rodríguez's points relative to the amendments on remand.

Rodríguez argues too that the district court credited certain unreliable information during sentencing, and she says that remand is therefore appropriate on that ground.  We do not pass on that argument either, as the district court will have an opportunity to consider the facts anew on remand.

Lastly, Rodríguez requests that we remand her case to a new judge for resentencing.  Because our practice is to remand to a new judge "only in very unusual cases," United States v. Vázquez-Méndez, 915 F.3d 85, 88 (1st Cir. 2019), and because Rodríguez fails to explain what makes this matter unusual, we decline that request.

- 25 -